**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Marc GRIFFITH, Defendant–Appellee.**

No. 88–5282.

United States Court of Appeals, Sixth Circuit.

Cause Argued Sept. 23, 1988.

Decided Dec. 27, 1988.

Rehearing and Rehearing En Banc Denied Feb. 10, 1989.

statute applied even though it only punishes assaults committed with specific intent, while the Tennessee statute punishes reckless assault.

We believe that the federal and state statutes operate on essentially different theories, thus allowing the act here to come well within the language of the Assimilative Crimes Act as an act "not made punishable by any enactment of Congress." 18 U.S.C. § 13. Use of the ACA here is not barred by *Williams.* We therefore reverse and remand for further proceedings in the district court.

I

Griffith was trespassing on the Fort Campbell Military Reservation, an area of exclusive federal jurisdiction. He was hunting deer with a rifle, which is prohibited on the Reservation, and allegedly had been drinking. He was in an area reserved for bow hunters, who do not have to wear distinctive orange clothing. Griffith had hunted there before and knew the regulations.

Late in the afternoon, when it was already getting dark, Griffith was walking adjacent to a heavily wooded area. He noticed movement in the dense undergrowth, and, assuming that the movement was that of a deer, he fired, striking Gary M. Sively in the head, causing a severe wound and the loss of Sively's eye. Griffith fled, but was later caught. He made a statement to the authorities that he thought he was shooting at a deer. Sively brought a civil action for damages, and settled for $125,000, which was paid in part through insurance Griffith had purchased through the National Rifle Association.

The district court dismissed this criminal action on the grounds that 18 U.S.C. § 113, the federal assault statute, punishes assaults committed on federal land. Thus, the court reasoned, the Tennessee assault statute cannot be applied through the ACA to confer jurisdiction on a federal court. The ACA makes unlawful violations of state criminal statutes on federal lands, but

Joe B. Brown, U.S. Atty., William T. Warren, III, Asst. U.S. Atty. (argued), [COR NTC gvt] Nashville, Tenn., for U.S.

Donald Dawson, (argued), Searcy, Smith & Dawson, Nashville, Tenn., for Marc A. Griffith.

Before WELLFORD and BOGGS, Circuit Judges; and PECK, Senior Circuit Judge.

BOGGS, Circuit Judge.

While trespassing on the Fort Campbell Military Reservation, an area of exclusive federal jurisdiction, Griffith shot a fellow hunter. He was indicted for violating the Assimilative Crimes Act (ACA), based on his violation of a Tennessee law that forbids a person from "causing serious bodily injury ... recklessly under circumstances manifesting extreme indifference to the value of human life." Tenn.Code Ann. § 39–2–101 (Supp.1988). The indictment was dismissed on the ground that the federal assault statute, 18 U.S.C. § 113(c),[1] was sufficiently similar to the Tennessee assault statute that the indictment could not stand under the ACA and the doctrine of *Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). The district court reasoned that the federal

---

1. The federal assault statute punishes: "Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse...." 18 U.S.C. 113(c).

not when doing so would enlarge the scope of a separate federal criminal statute. *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). Here, because the federal government has proscribed assault in a separate statute, the court held that the prosecution cannot enlarge the scope of that statute by applying the state statute through the ACA. Thus, the district court dismissed the indictment, and the government appeals.

## II

The statement of the Assimilative Crimes Act is clear. The federal government can punish for state crimes committed on federal property when the act is not made punishable by Congress, but is punishable under state law. 18 U.S.C. § 13. Read literally, any set of circumstances which makes out a crime under state law but not under federal law could still be punished under state law, read through the ACA. However, the Supreme Court decision in *Williams* indicated that this simplistic reading was not correct. In *Williams*, the exact set of circumstances, intercourse by an adult male with a sixteen to eighteen-year-old female, constituted a crime under state law, which set the age of consent at eighteen, but was not a crime under federal law, which set the age of consent at sixteen. *Id.* at 715, 66 S.Ct. at 780-81. However, the Supreme Court ruled that the ACA should be interpreted as not allowing federal prosecution for state law violations where the exact act (intercourse, or intercourse with a minor) was already criminal under federal law and only the definition or boundary condition differed in the state law. *Id.* at 717, 66 S.Ct. at 781. The Court emphasized that Congress had already considered the question of the proper age of consent for the federal crime of statutory rape, and determined that it should be sixteen. *Id.* at 724-25, 66 S.Ct. at 784-85. The Court reasoned that it would be using state law to expand rather than to supplement federal law to allow prosecution under a state law which more broadly defined and penalized the same offense. *Id.* at 717, 66 S.Ct. at 781.

Since *Williams,* there have been a number of court of appeals decisions analyzing a variety of situations in which an overlap or conflict between state and federal law is claimed to bar a prosecution under the ACA. Analytically, we may divide these cases into four groups.

In the first group are cases in which all actions criminal under federal law are criminal under state law, but under state law additional acts are criminal as well. This is the situation in *Williams,* 327 U.S. at 715, 66 S.Ct. at 780-81. All intercourse with a female under sixteen would also be intercourse with a female under eighteen. All that differs is the definition of one element, the age of consent. *Ibid. See also United States v. Butler,* 541 F.2d 730, 735 (8th Cir.1976) (added proof requirement in federal statute that possession of firearm must be shown to have occurred in or affecting commerce does not make the ACA and state law available).

In a second group of cases, the federal law encompasses a broader area than the state law; however, usually the state law carries greater penalties or greater ease of proof. This was the case in a Sixth Circuit case, *Shirley v. United States,* 554 F.2d 767, 768-69 (6th Cir.1977), in which the state law charge of armed robbery was a more specific and more harshly punished form of the federal crime of robbery. The court there ruled that where the federal crime already occupied the field, the ACA could not be used simply to enhance punishment or facilitate conviction. *Id.* at 769. *See also United States v. Big Crow,* 523 F.2d 955, 958 (8th Cir.1975) (state law prohibited assault resulting in serious bodily injury; court held federal assault statute applied even if less severe penalty attaches).

A third group comprises cases in which the state and federal laws overlap to a degree, but each occupies an area not covered by the other. Further, in this category, the crime which has been committed lies in the intersection of the two laws. This was the case in *Fields v. United States,* 438 F.2d 205 (2d Cir.1971), *cert. denied,* 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684

(1971), in which the acts committed would have been criminal under either the state malicious shooting statute or the federal assault statute, but prosecution was undertaken under the state statute through the ACA. In *Fields*, the Second Circuit held that this was a proper application of the ACA because two completely different theories of criminal conduct were involved. 438 F.2d at 207–08. In that situation, the court believed that it was proper to permit use of the ACA because "the state statute provides a theory essentially different from that provided in the federal statute," *ibid.*, even though the same set of actions would have described some crime under federal law. *See also United States v. Brown*, 608 F.2d 551 (5th Cir.1979) (state child abuse statute better fit the facts of the case even though the case could have been prosecuted under federal assault statute).

The final group of cases involves the same pattern of laws as in the third group, that is, overlapping but differing state and federal laws. However, in this group, the acts fall into the disjunctive area where the actions constitute a crime under state law but not under federal law.

That is our situation here. Because of the intent requirement, the reckless shooting in our case would not be a crime under federal law. *United States v. Big Crow*, 728 F.2d 974, 975–76 (8th Cir.1984). If prosecution under the ACA is permitted in the third group of cases, and we agree with the holding in *Fields* that it is [2], then, *a fortiori*, prosecution under the ACA should be allowed in cases falling into the fourth group. This is because the same logic as in *Fields* favors allowing federal prosecution, 438 F.2d at 207, while the counterargument that the same act is being made punishable under both state and federal law, contrary to the intent of the ACA, is absent.

Defendant attempts to bring this case within the direct rubric of *Williams*, 327 U.S. 711, 66 S.Ct. 778, on the basis that this is simply a case in which the state law reaches more widely than the federal.

However, the statutes do not differ simply by a definitional change. The theory of reckless endangerment, often called "aggravated assault," is quite different than that of ordinary assault. Model Penal Code § 211.1 (Proposed Official Draft 1962). In addition, the state law requires an attempt to inflict serious bodily harm, which is not the case with the federal statute here, which simply requires any lesser degree of bodily harm. Tenn.Code Ann. § 39–2–101 (1986); 18 U.S.C. § 113(c).

Finally, a rigorous application of defendant's theory would eliminate much of the usefulness of the Assimilative Crimes Act. A large portion of the panoply of state criminal law involves actions which could be prosecuted as assaults under one of the subsections of 18 U.S.C. § 113, including simple assaults under 18 U.S.C. § 113(e). If this interpretation were to hold, contrary to the cases discussed above, there could be no prosecutions under the ACA for crimes such as malicious shooting, injury to a child, or any other aggravated or otherwise varied forms of these crimes. That is a result clearly not intended by Congress, which enacted the ACA "to use local statutes to fill in gaps in the Federal Criminal Code . . . ," *Williams*, 327 U.S. at 723, 66 S.Ct. at 784. The absence of a federal statute addressing assaults committed without intent is, we believe, one such gap which the ACA, by facilitating application of state law, was intended to fill. Thus, we REVERSE and REMAND for proceedings consistent with this opinion.

---

**2.** We note that at least one district court has disagreed with the approach taken in *Fields*, *United States v. Narciso*, 446 F.Supp. 252, 274 (E.D.Mich.1977), stating that the ACA cannot be employed when any federal statute "speaks to the conduct charged." However, we find *Fields* to be the more persuasive of the two cases, and accordingly follow the approach taken there.