UNITED STATES of America,
Plaintiff–Appellee,

v.

Wallace JOHNSON, Jr. Defendant–Appellant.

No. 91–2202.

United States Court of Appeals,
Tenth Circuit.

June 16, 1992.

Act, 18 U.S.C. § 13, a person may be prosecuted and convicted of the lesser included offense of aggravated assault, in violation of New Mexico law, when Congress has enacted a statute (18 U.S.C. § 113) making simple assault and its more aggravated forms federal offenses.

## BACKGROUND

On the evening of September 11, 1990, Sergeant Phillip Joe, a Navajo tribal police officer in Shiprock, New Mexico, received a report of a car being driven in a reckless manner on the Navajo Indian Reservation. The car was described as a black two-door Oldsmobile. Joe drove his marked patrol car to the area, and saw a black Oldsmobile pass him at a high rate of speed. Joe pursued the car and eventually pulled up behind it. Joe recognized the driver as Wallace Johnson, Jr., and ordered him out of the car. Johnson's fellow passenger, Melvin Nez, also got out of the car, carrying two large bottles. Joe noticed Johnson had a strong odor of alcohol on his breath and had difficulty getting out of the car.

After Joe informed Johnson he was going to arrest him for reckless driving, he noticed Johnson had a gun in his hand. Joe attempted to talk Johnson into giving him the gun, but Johnson yelled at Joe to leave and said, "I can easily kill you." Joe retreated to his car, but Johnson pursued him and demanded the car keys. Joe complied with the demand, but the patrol car kept running because it had been modified to keep running when the keys were removed. During this time, Johnson kept the gun pointed at Joe, who continued to ask Johnson to give him the gun. As they were talking, Johnson moved to within three or four feet of Joe, pointed the gun in the direction of Joe's head and fired one shot. Joe testified he felt particles from the gunshot blowing into his face. Joe then retreated away from the patrol car, and Johnson moved to the driver's side of the patrol

Paula Burnett, Asst. U.S. Atty., Albuquerque, N.M. (Mary L. Higgins, Asst. U.S. Atty. and Don J. Svet, U.S. Atty., on the brief), for plaintiff-appellee.

Theresa E. Storch, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

BALDOCK, Circuit Judge, BRORBY, Circuit Judge, and BELOT, District Judge.[*]

BELOT, District Judge.

This appeal presents the question of whether, under the Assimilative Crimes

[*] Honorable Monti L. Belot, United States District Judge for the District of Kansas, Sitting by designation.

car and attempted to fire his gun into the interior of the car. Joe heard the gun click three times, but no bullets were actually fired. Joe then charged Johnson, who aimed the gun at Joe and informed him he had just loaded the gun and "the next one is going to fire." Johnson's mother intervened at this point, attempting to disarm and pacify her son. While Johnson was preoccupied with his mother, Joe jumped into his patrol car and drove off. Johnson ran after the patrol car, pointing his gun in the direction of the patrol car. Joe stopped the car and got out. He drew his gun and ordered Johnson to drop his gun. Johnson walked towards Joe with his gun pointed at Joe and said, "Go ahead, shoot me."

The two men circled around the patrol car. Melvin Nez walked up to the front of the patrol car at this point and confronted Joe. Joe attempted to handcuff Nez, but Johnson intervened by pointing his gun at Joe and ordering Joe to let Nez go. Joe released Nez, and Johnson and Joe resumed circling around the patrol car with Joe ordering Johnson to drop the gun. Johnson refused and at one point pointed the gun at his own head. Joe finally charged Johnson and grabbed Johnson's gun away from him. Nez came to Johnson's aid, and the three men fell on the ground and wrestled, with Nez attempting to gain control of a gun. Other Navajo tribal police officers arrived and helped break up the struggle and arrest Johnson.

Johnson was indicted for assault with a dangerous weapon. 18 U.S.C. § 113(c). At trial, he admitted pointing the gun at Sergeant Joe several times and firing the gun, but claimed he was so intoxicated that he could not form the specific intent to do bodily harm. An expert testified Johnson's blood alcohol content was likely in the range of .25 to .30 percent. Over Johnson's objection, the court gave a jury instruction on aggravated assault, based on N.M.Stat.Ann. § 30–3–2 A (1978),[1] as a lesser included offense of assault with a

dangerous weapon. The court rejected Johnson's tender of a jury instruction on simple assault, 18 U.S.C. § 113(e). The jury found Johnson guilty of aggravated assault.

## DISCUSSION

The aggravated assault instruction was given pursuant to the provisions of the Assimilative Crimes Act, 18 U.S.C. § 13, which permits the United States to adopt state law for any act or omission occurring on federal property which, "although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction for the State, Territory, Possession, or District in which such place is situated." Under its terms, the Assimilative Crimes Act may not be invoked if federal law already proscribes the same conduct. *U.S. v. Gibson*, 880 F.2d 795, 796 (4th Cir.1989) (Citations omitted).

The federal offense of assault with a dangerous weapon requires proof of three elements: an assault, with a dangerous weapon, and with the intent to do bodily harm. The New Mexico aggravated assault statute only requires proof of the first two elements. *State v. Cruz*, 86 N.M. 455, 457, 525 P.2d 382 (Ct.App.1974). Johnson argues the New Mexico law is not assimilable under 18 U.S.C. § 13 because the federal offense of assault with a dangerous weapon is defined and punished under 18 U.S.C. § 113(c), and the Assimilative Crimes Act cannot be used to enlarge the scope of an existing federal offense. He also argues the trial court erred in refusing his proposed instruction on simple assault, 18 U.S.C. § 113(e). The government counters that the use of state law through the Assimilative Crimes Act is not prohibited because the federal and state statutes covering Johnson's acts are based on different theories of criminal conduct.

The Supreme Court addressed the scope of the Assimilative Crimes Act in *Williams*

---

1. N.M.Stat.Ann. 30–3–2. Aggravated assault. Aggravated assault consists of either:

A. unlawfully assaulting or striking at another with a deadly weapon ...

*v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). In *Williams,* the defendant was convicted of having carnal knowledge on an Indian reservation with a female who was over sixteen, but under eighteen, years of age. The federal crime of having carnal knowledge with a female required proof that the female was under sixteen years of age at the time of the offense. The indictment, which was based on Arizona law, charged that the female was under eighteen years of age at the time of the offense.

The Court held the Arizona statute was not applicable under the Assimilative Crimes Act and reversed the conviction with the following reasoning:

> We hold that the Assimilative Crimes Act does not make the Arizona statute applicable in the present case because (1) the precise acts upon which the conviction depends have been made penal by the laws of Congress defining adultery and (2) the offense known to Arizona as that of "statutory rape" has been defined and prohibited by the Federal Criminal Code, and is not to be redefined and enlarged by application to it of the Assimilative Crimes Act. The fact that the definition of this offense as enacted by Congress results in a narrower scope for the offense than that given to it by the State, does not mean that the Congressional definition must give way to the State definition. This is especially clear in the present case because the specified acts which would come within the additional scope given to the offense by the State ... are completely covered by the federal crimes of adultery or fornication.

*Id.* at 717–18, 66 S.Ct. at 781–82.

The Court noted that Congress had given special attention to the age of consent for the federal crime of statutory rape, and determined it should be sixteen. *Id.* at 724–25, 66 S.Ct. at 784–85. The Court believed a conflicting state definition could not be used to enlarge the scope of the offense defined by Congress. *Id.* at 718, 66 S.Ct. at 781.

Johnson relies on *United States v. Eades,* 615 F.2d 617 (4th Cir.1980). In *Eades,* the defendant was convicted of violating the Maryland third-degree sexual offense statute. He appealed his conviction of the Maryland crime and argued that application of the Maryland law through the Assimilative Crimes Act was preempted by the federal assault statute. The court noted that 18 U.S.C. § 113 covered the entire range of assaults, and a person could not possibly violate the Maryland law without at the same time violating some portion of § 113. *Id.* at 622. In the court's view:

> "the precise acts upon which the convictions of both defendants depend have been made penal" by a congressional enactment proscribing various assaults, and the Maryland statute merely redefines certain types of assaults and establishes a more severe permissible penalty for them. Therefore, the Assimilative Crimes Act does not make the Maryland statute applicable to federal reservations.

*Id.* at 623. The court, relying on *Williams,* reversed the defendant's conviction.

On rehearing *en banc,* the court reversed itself and affirmed the defendant's conviction. *United States v. Eades,* 633 F.2d 1075 (4th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). The court believed that Congress did not intend, when it enacted § 113, to deal comprehensively, or even generally, with sexual offenses. *Id.* at 1077. While acknowledging some overlap between the federal assault statute with Maryland's sexual offense statute, the court stated that the slight touching of federal and state statutes which have different purposes, does not mean that the state statute cannot be assimilated in other contexts where there is no relevant federal statute proscribing the specific conduct in which the defendant has engaged. *Id.* The court also noted that the great majority of offenses proscribed by the Maryland sexual offense statute encompass simple assault as a lesser included offense. In the court's view, this did not convert § 113(e) into a general sexual offense statute. *Id.*

The government relies on *U.S. v. Griffith*, 864 F.2d 421 (6th Cir.1988), *cert. denied*, 490 U.S. 1111, 109 S.Ct. 3167, 104 L.Ed.2d 1029 (1989). In *Griffith*, the defendant mistakenly shot a fellow hunter while trespassing on a federal military reservation in Tennessee. He was indicted for violating the Assimilative Crimes Act, based on his violation of Tennessee law that forbade a person from "causing serious bodily injury … recklessly under circumstances manifesting extreme indifference to the value of human life." Tenn. Code Ann. § 39–2–101 (Supp.1988). The district court dismissed the indictment based on the doctrine of *Williams*. The court of appeals reversed, holding the federal assault statute and the state statute operated on essentially different theories. *Id.* at 422.

The court categorized the appellate decisions analyzing situations where a conflict or overlap between state and federal law is claimed to bar a prosecution under the Assimilative Crimes Act. *Id.* at 423–24. The court classified the case before it as a situation where the defendant's actions constituted a crime under state law but not under federal law. The absence of an intent requirement in the state law convinced the court that the federal and state offenses were premised on two completely different theories of criminal conduct. Additionally, the court was persuaded that policy reasons justified its holding. It noted that the defendant's theory would eviscerate the utility of the Assimilative Crimes Act by effectively barring prosecutions for crimes such as malicious shooting or aggravated assault. Such a result, the court believed, could not have been intended by Congress, which enacted the Assimilative Crimes Act to fill gaps in the Federal Criminal Code. *Id.*

This circuit interpreted the scope of the Assimilative Crimes Act in *United States v. Patmore*, 475 F.2d 752 (10th Cir.1973). In *Patmore*, the defendant, an inmate at the federal penitentiary in Leavenworth, Kansas, was accused of stabbing a fellow inmate. He was indicted for aggravated battery in violation of a Kansas statute,[2] through the Assimilative Crimes Act. Patmore pled guilty to aggravated assault, a lesser included offense and a violation of another Kansas statute.[3] He was sentenced to serve a three to ten year prison sentence.

Patmore contended on appeal that the federal assault statute (18 U.S.C. § 113(c)) defined the same offense as the Kansas statute to which he pled guilty, and he should have been sentenced under the federal statute. The trial court held the state and federal statutes were not identical because the federal statute required proof of specific intent, while the Kansas statute did not. This court reversed the trial court and held: "[T]he precise acts to which Patmore pleaded guilty were made penal by the federal statute defining assault, 18 U.S.C. § 113(c), and cannot be redefined by application of the Assimilative Crimes Act." *Id.* at 753.

While *Patmore* is factually similar to the case at bar, it is legally distinguishable. Both defendants committed their assaults with a deadly weapon; Patmore used a knife, while Johnson used a handgun. In both cases the defendant was convicted of the state aggravated assault statute through application of the Assimilative Crimes Act. A careful reading of the case, however, reveals a crucial difference between the Kansas and New Mexico aggravated assault statutes.

In *Patmore*, this court interpreted the Kansas aggravated assault statute as having a specific intent requirement and therefore being the equivalent of 18 U.S.C. § 113(c). We first considered the federal statutory definition of assault, which was "an intentional threat or attempt to do bodily harm to another." We then read that definition in conjunction with the Kansas

---

2. K.S.A. 1971 Supp. 21–3414(c).

3. K.S.A. 1971 Supp. 21–3410(a).

aggravated assault definition, and stated the federal and state crimes were equivalent. *Id.* at 753. In other words, this court determined that both 18 U.S.C. § 113(c) and the Kansas aggravated assault statute required the specific intent to do bodily harm.

On the other hand, the New Mexico aggravated assault statute does not require a showing of specific intent. *State v. Cruz,* 86 N.M. 455, 525 P.2d 382 (Ct.App. 1974). Thus, because the federal and New Mexico crimes are not equivalent, *Patmore* is legally distinguishable and does not preclude application of the Assimilative Crimes Act.

The resolution of this issue hinges on whether the federal assault statute preempts the generic field of assault, or whether it merely preempts the precise acts covered in the federal statute, leaving room for the application of state assault statutes to fill gaps in the federal statute.

The holding in *Patmore* referred to the *precise acts* committed by the defendant and concluded the Kansas aggravated assault statute could not be applied because it was the equivalent of the federal statute. In other words, the court in *Patmore* found no gap in the federal statute to be filled by the Kansas statute. Thus, we interpret *Patmore* to require us to ask whether the federal statute covers the precise acts for which Johnson was convicted. The answer is no. The federal statute does not cover the act of an assault with a deadly weapon but without the intent to commit bodily harm. In these circumstances, resort to the New Mexico statute is appropriate to fill a gap in the federal statute. We agree with the *Griffith* court that this interpretation is more consistent with the intent of Congress to apply the Assimilative Crimes Act in such a manner to use local law to supplement the gaps in the Federal Criminal Code.

We hold the trial court properly instructed the jury on the lesser included state offense of aggravated battery.

Johnson also argues the trial court abused its discretion by refusing to instruct

the jury on the lesser included offense of simple assault, 18 U.S.C. § 113(e). A defendant is entitled to a lesser included offense instruction "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *U.S. v. Young,* 862 F.2d 815, 820 (10th Cir.1989) (Citation omitted). A lesser included offense instruction is warranted if: 1) there has been a proper request, 2) the lesser included offense consists of some, but not all, of the elements of the offense charged, 3) the elements differentiating the two offenses are a matter in dispute and 4) a jury could rationally convict on the lesser offense and acquit on the greater offense. *Id.* A lesser included offense instruction is not required merely because a lesser offense is included within the offense charged in the indictment. *United States v. Chapman,* 615 F.2d 1294, 1299 (10th Cir.1980), *cert. denied* 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980).

The first two requirements and the fourth requirement are met, but the third requirement is not. The elements differentiating assault with a dangerous weapon from simple assault are the use of a deadly weapon and the intent to commit bodily harm. While Johnson's intent was very much in dispute by virtue of his level of intoxication, his use of a deadly weapon is not. Johnson admitted he pointed a gun at Sergeant Joe and fired it. When no dispute exists regarding elements of the greater offense which are not part of the lesser offense, then no lesser offense instruction is appropriate. *United States v. Burns,* 624 F.2d 95, 103 (10th Cir.1980), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).

We hold the trial court did not abuse its discretion in refusing to instruct the jury on simple assault. Johnson's conviction is AFFIRMED.