16 F.3d 418
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Curtis WAUPEKENAY, Defendant-Appellant.
 No. 93-2135.
 United States Court of Appeals, Tenth Circuit.
 Feb. 7, 1994.
 
 1
 D.N.Mex.; No. 91-CR-267.
 
 
 2
 Before MCKAY and EBEL, Circuit Judges, and SAFFELS,* District Judge.
 
 
 3
 ORDER AND JUDGMENT**
 
 
 4
 SAFFELS, Senior District Judge.
 
 
 5
 Defendant Steven Curtis Waupekenay appeals his conviction by the United States District Court for the District of New Mexico of two counts of aggravated assault, in violation of 18 U.S.C. Sec. 13(a) and N.M.Stat.Ann. Sec. 30-3-2(A) (1978).
 
 
 6
 The defendant was indicted on two counts of violating 18 U.S.C. Sec. 113(c), assault with a dangerous weapon with intent to do bodily harm. The offenses were allegedly committed on the Jicarella Apache Indian Reservation in New Mexico, stipulated by the parties to be within Indian country for purposes of 18 U.S.C. Secs. 113(c) and 1153(a).
 
 
 7
 The defendant was acquitted by the jury of both charges of violating 18 U.S.C. Sec. 113(c). However, the jury convicted him of two counts of the lesser-included offense of assault with a deadly weapon, as defined by New Mexico criminal statute N.M.Stat.Ann. Sec. 30-3-2(A), made subject to federal prosecution by the Assimilative Crimes Act, 18 U.S.C. Sec. 13.
 
 
 8
 At the time of the alleged offenses, defendant was living with his common-law wife, Nanette Waupekenay, in their mobile home located on the Jicarella Apache Indian Reservation. On the night in question, Nanette drove to the police station and asked tribal police to go to the mobile home, stating that she and her husband were having an argument and she wanted him removed. The officers entered the mobile home with her consent. The defendant, wielding a loaded rifle, shouldered it and pointed it at the two police officers. After another officer arrived, defendant ultimately agreed to put the gun down.
 
 
 9
 The defendant first argues that the trial court erred in permitting the prosecution to ask the defendant's wife, on cross-examination, whether she had ever previously called police because of problems she experienced with the defendant. In advance of trial, the defendant filed a motion in limine to exclude evidence of defendant's prior convictions and a statement by one of the officer victims that the defendant was known to him from previous contacts. The trial court did not rule on the defendant's motion in limine.
 
 
 10
 Nanette Waupekenay took the witness stand on the defendant's behalf. She testified that on the night in question, she had become angry with the defendant and asked him to leave, because he was sleeping on her side of the bed and refused to move over when she wanted to go to bed. She then left the trailer and drove to the Jicarella Police Department to ask for assistance. After returning from the police station, she waited outside the trailer until one of the officers arrived.
 
 
 11
 She testified that she told the officer she and the defendant were having a disagreement, but she did not explain to him what the disagreement was about because she was too embarrassed. The officer then knocked on the door and ultimately persuaded the defendant to open it. After the defendant and the officer talked through the screen door, Nanette testified that the officer struggled with the defendant and forced his way into the trailer, directing her to stay outside. A second officer then arrived, who also entered the trailer. She testified that the officers did not ask for her permission to enter the trailer, and she never gave them permission to do so.
 
 
 12
 On cross-examination, Nanette admitted that she told the officers she wanted them to ask the defendant to leave because of the way he had been acting. However, she repeated that she did not give either officer permission to enter the home, although she did not try to stop them when they went inside. She testified that the defendant had not threatened her, hit her, or thrown things around; all he did was sleep on the wrong side of the bed and refuse to move, which made her angry.
 
 
 13
 At this point, the government's attorney asked for a bench conference. Government's counsel referred to the defendant's motion in limine and told the court there had been prior domestic disturbances in which Nanette had called out the police for assistance. Counsel for the government then asked the court for permission to ask the witness whether she had ever before had occasion to call police out to the home for domestic disturbances, because her testimony had left the impression with the jury that the police officers had been responding to a frivolous call. Defense counsel objected on the basis of relevancy. The trial court agreed that the testimony had left such an impression, and permitted the government to ask only that particular question.
 
 
 14
 Government's counsel then completed the cross-examination of Nanette as follows:
 
 
 15
 Q: Mrs. Waupekenay, had you ever called the Jicarella police before for problems you were having with your husband?
 
 
 16
 A: Yes.
 
 
 17
 A trial court's discretionary determination whether or not to allow the admission of evidence will not be disturbed absent a clear showing of abuse of discretion. See, e.g., United States v. Morgan, 936 F.2d 1561, 1571 (10th Cir.1991) (citations omitted), cert. denied, 112 S.Ct. 1190 (1992). The question permitted by the court was not asked to prove the character of the defendant to show he acted in conformity therewith, the purpose prohibited by Fed.R.Evid. 404(b). Considered in the context of Nanette's testimony, the question was proper to rebut the suggestion that the officers had no justification for entering the home in response to Nanette's request for assistance. The question and answer simply left the impression with the jury that the witness had a propensity to call the police when engaged in disputes with the defendant, even if the disputes were frivolous. Although the question and answer may have left the impression with the jury that defendant had been involved in domestic problems in the past, it did not convey that he had initiated those problems or that he had any propensity for violence. Nor did the question indicate that the defendant had ever before assaulted a police officer with a dangerous weapon, which was the crime charged in this case. Finally, the question was permissible to impeach the testimony of the witness as to the reason she sought assistance from the police and her testimony denying that she gave the officers permission to enter the home. We certainly cannot conclude that the trial court's evidentiary ruling was an abuse of discretion.
 
 
 18
 Furthermore, defense counsel did not object to the question on the basis of Fed.R.Evid. 404(b), but rather its relevance. The defendant has therefore waived the right to assert on appeal that the trial court improperly allowed evidence to be admitted contrary to Rule 404(b), in the absence of plain error resulting in manifest injustice. See United States v. Mendoza-Salgado, 964 F.2d 993, 1008 (10th Cir.1992) (citation omitted). The trial court in this case did not commit plain error in permitting the government's question.
 
 
 19
 Finally, even if we were to reach the merits of defendant's argument, we could not conclude that allowing the question amounted to a denial of his motion in limine. The defendant's motion in limine specifically sought to exclude evidence of the defendant's prior convictions or arrests, and a statement by one of the officer victims that the defendant was known to him from prior contacts. The question the court permitted the government to ask the witness did not elicit any such evidence.
 
 
 20
 Next, the defendant argues that the trial court erred in instructing the jury on the lesser-included New Mexico offense of assault with a deadly weapon. The defendant contends that he was impermissibly convicted of the lesser-included offense because state law cannot be used to more broadly define and penalize what is already defined as a federal offense. See Williams v. United States, 327 U.S. 711, 717-18 (1946).
 
 
 21
 Under 18 U.S.C. Sec. 13(a), whoever commits an act on an Indian reservation which, although not punishable by act of Congress, would be punishable under the laws of the state in which the reservation is located, is guilty of a like offense and subject to like punishment. The New Mexico offense of aggravated assault requires only assault with a deadly weapon, committed with general criminal intent. See N.M.Stat.Ann. 30-3-2(A); State v. Manus, 597 P.2d 280, 284 (N.M.1979) (citing cases), overruled on other grounds, Sells v. State, 653 P.2d 162 (N.M.1982); State v. Cruz, 525 P.2d 382, 384 (N.M.Ct.App.1974). The federal offense of assault with a dangerous weapon, proscribed by 18 U.S.C. Sec. 113(c), requires the additional element of specific intent to do bodily harm, which is not an element of the New Mexico offense. See United States v. Boone, 347 F.Supp. 1031, 1033 (D.N.M.1972); State v. Cruz, 525 P.2d at 384.
 
 
 22
 This issue is foreclosed by United States v. Johnson, 967 F.2d 1431 (10th Cir.1992), cert. denied, 113 S.Ct. 1053 (1993), in which this court rejected precisely the same argument raised by the defendant in this case. While federal law prohibits assault with a dangerous weapon with intent to do bodily harm; assault by striking, beating, or wounding; simple assault; and assault resulting in bodily injury, see 18 U.S.C. Sec. 113(c)-(f), the specific conduct the jury found had been committed by the defendant in this case, assault with a deadly weapon, is not specifically addressed by 18 U.S.C. Sec. 113. In Johnson, we noted that the New Mexico aggravated assault statute does not require the specific intent element required by 18 U.S.C. Sec. 113(c). See 967 F.2d at 1436. The New Mexico statute may therefore be used to "fill a gap in the federal statute," since the precise acts for which the defendant was convicted were not covered by the federal statute. Id.; see 18 U.S.C. Sec. 13(a).
 
 
 23
 This case is indistinguishable from Johnson. The trial court therefore did not err in instructing the jury on the lesser-included offense of aggravated assault as defined by N.M.Stat.Ann. Sec. 30-3-2(A).
 
 
 24
 The third and final issue raised by the defendant is whether the trial court erred by failing to give the jury the New Mexico general criminal intent instruction, N.M.U.J.I. 14-141.[1] The defendant contends that the trial court improperly refused his request to include the New Mexico general intent instruction after the court decided to instruct on the lesser-included state offense of aggravated assault.
 
 
 25
 Fed.R.Crim.P. 30 bars a party from assigning as error any portion of the jury instructions, or any omission from the instructions, unless the party timely objects and states distinctly the matter to which the party objects and the grounds for the objection. The transcript of the conference on jury instructions belies the defendant's arguments that his counsel complied with Rule 30 by specifically requesting that the trial court give N.M.U.J.I. 14-141. The pertinent part of the discussion on instructions is as follows:
 
 
 26
 MS. ARRELANS: An additional matter I think I may need to bring to the Court's attention, with regard to the state charge--
 
 
 27
 THE COURT: You mean the lesser included charge?
 
 
 28
 MS. ARRELANS: The lesser included state aggravated assault charge, perhaps there should be an accompanying instruction with regard to intent, simply intent.
 
 
 29
 The trial court denied the request.
 
 
 30
 We note that the defendant's proposed jury instructions are not included in the record on appeal. There is therefore no support in the record for defense counsel's assertion that the trial court was specifically asked to give the jury N.M.U.J.I. 14-141. See United States v. Vasquez, 985 F.2d 491, 495 (10th Cir.1993) (appellant is responsible for insuring that all materials on which he relies are included in the record on appeal). The defense certainly did not preserve the issue for appeal by distinctly stating the grounds for counsel's objection to the omission of such an instruction, as required by Fed.R.Civ.P. 30. Therefore, the defendant may not assign as error on appeal the trial court's failure to give that particular instruction.
 
 
 31
 Even if we were to address the merits of the issue, however, the trial court's failure to give the New Mexico instruction on general intent was not reversible error. In considering a claim of error with regard to jury instructions, they must be read and evaluated in their entirety, and the appellate court must determine whether the instructions, when taken as a whole and examined in light of the record, fairly, adequately, and correctly state the governing law and provide the jury with ample understanding of the applicable principles of law and factual issues confronting them. United States v. Denny, 939 F.2d 1449, 1454 (10th Cir.1991); see also State v. Gunzelman, 512 P.2d 55, 61 (N.M.1973) (jury instructions must be considered as a whole and are sufficient if they substantially follow the language of the statute or use equivalent language), overruled on other grounds, State v. Orosco, 833 P.2d 1146, 1149 (N.M.1992).
 
 
 32
 Although the Use Notes to the New Mexico Uniform Jury Instructions require U.J.I. 14-141 to be given for all criminal offenses except those requiring specific criminal intent or those requiring no criminal intent whatsoever, the New Mexico Supreme Court has held that the failure of a trial court to follow such a Use Note is not jurisdictional error that automatically requires reversal. See State v. Doe, 672 P.2d 654, 656 (N.M.1983) (addressing N.M.U.J.I.Crim. 1.50, the predecessor of N.M.U.J.I. 14-141).
 
 
 33
 Doe held that the uniform instruction on general criminal intent is not an essential element instruction but rather a definitional instruction.[2] In so holding, the court overruled State v. Otto, 652 P.2d 756 (N.M.Ct.App.1982), one of the cases relied upon by the defendant in the case presently before us. See Doe, 672 P.2d at 656. The New Mexico Supreme Court held that while the language of the Use Note may not be ignored, "a defendant cannot sit back and insert error into a trial by his or her inaction and receive an automatic reversal when the crime has been fairly instructed on." 672 P.2d at 657. Specifically, the court held:
 
 
 34
 [T]he failure to give the general criminal intent instruction does not automatically require reversal solely because the Use Note provides that it must be given when there was no tender of the proper instruction or objection to not giving the instruction. The failure to give UJI Crim. 1.50 [predecessor to 14-141] must be looked at, with the other instructions as a whole, to determine whether the crime was properly instructed on.
 
 
 35
 Id.
 
 
 36
 The defendant incorrectly contends in his brief that the instruction given did not include any reference to an intentional act on the part of the defendant. The jury instruction given by the trial court on the lesser-included offense of assault with a deadly weapon specifically required the jury to find, as a separate element of the offense, that the defendant intended to point the gun at the victim. At oral argument, defense counsel conceded that the trial court gave this instruction, but nevertheless asserted that its language was not sufficient to convey to the jury that they must find that the defendant acted "purposely." We disagree. The jury instruction given by the trial court incorporated all of the essential elements of the lesser-included offense, even though its form was quite different from the New Mexico uniform instructions. It is true that N.M.U.J.I. 14-305, which defines assault with a deadly weapon, does not include any reference whatsoever to the defendant's state of mind at the time of committing the threatening or menacing act. However, the trial court did not give N.M.U.J.I. 14-305. Rather, the trial court formulated its own instruction on the lesser-included offense, which included as a necessary and separate element that the defendant intended to point the gun at the victim.[3]
 
 
 37
 We conclude that the instructions given by the trial court properly instructed the jury on general criminal intent as required by New Mexico law. The court therefore did not commit reversible error by failing to instruct the jury in the precise form set forth in the New Mexico Uniform Jury Instructions.
 
 
 38
 AFFIRMED.
 
 
 
 *
 The Honorable Dale E. Saffels, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. --- F.R.D. ----
 
 
 [1]
 N.M.U.J.I. 14-141, and its accompanying Use Note, read as follows:
 INSTRUCTION 14-141. General criminal intent.[1]
 In addition to the other elements of __________ (identify crime or crimes), the state must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime [, even though he may not know that his act is unlawful].[2] Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, [and] his conduct [and any statements made by him].[2]
 USE NOTE
 
 
 [1]
 This instruction must be used with every crime except for the relatively few crimes not requiring criminal intent or those crimes in which the intent is specified in the statute or instruction.
 
 
 [2]
 Use bracketed portion only if applicable.
 
 
 [2]
 Even if general criminal intent were deemed an essential element of the offense, however, the failure to so instruct is not automatically reversible error. See State v. Orosco, 833 P.2d at 1148-49 (if essential element omitted from instructions was not factually in issue, a conviction may be affirmed notwithstanding the omission) (citations omitted). In this case, the issues in dispute were whether the officers had consent to enter the home, whether the defendant had the intent to do bodily harm, and whether his actions were justified under the circumstances. Whether or not he purposely aimed the gun at the officers was not in genuine dispute
 
 
 [3]
 We also note that the jury instructions given by the court included a separate instruction explaining the evidence from which the jury may infer the defendant's intent. See Doc. 39, Instruction No. 13. Therefore, the substance of the third and last sentence of N.M.U.J.I. 14-141 was adequately covered in the jury instructions