**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**David Bernard ABEYTA,**
**Defendant–Appellant.**

**No. 93–2192.**

United States Court of Appeals,
Tenth Circuit.

June 7, 1994.

Teresa E. Storch, of the Office of the Federal Public Defender, Albuquerque, NM, for defendant-appellant.

Rhonda P. Backinoff, Asst. U.S. Atty., Albuquerque, NM (John J. Kelly, U.S. Atty., with her on the brief), for plaintiff-appellee.

Before WHITE, Associate Justice (Ret.); * SEYMOUR, Chief Judge; and MOORE, Circuit Judge.

WHITE, Associate Justice (Retired).

Appellant challenges his assault conviction under 18 U.S.C. § 113(c), arguing primarily that the trial court's stated reasons for denying him a lesser included offense instruction were improper. We think his claim meritorious and remand the case to the District Court for further proceedings.

In the afternoon of April 2, 1992, appellant David Abeyta consumed a six pack of beer and a pair of whiskey shots before making his way to the home of Jody Sandoval, a friend. He went to Sandoval's seeking a ride to the Hacienda Lounge in Espanola, New Mexico where he hoped to cash his income tax refund check. Sandoval thought appellant already intoxicated but agreed to drive him to the bar. The two, joined by other friends, ended up spending much of the evening together at the Hacienda; while there, appellant had another six beers and somewhere between two and five additional whiskey shots.

Sometime after 11 p.m. Greg Abeyta, another patron at the bar, and appellant began what some witnesses described at trial as a loud shouting match over their shared surname. Greg Abeyta himself testified that their argument began when he asked whether appellant was related to Ricky Abeyta, a resident of the area who made national headlines in 1991 when he was charged with seven homicides. Appellant claimed at trial to have no recollection of the argument since he was "pretty well intoxicated" by the time it transpired; he did, however, indicate that he recalled Greg Abeyta patting his pocket as if to suggest he was carrying a knife or gun he might put to use. Several witnesses inside the bar agree that both men were quite drunk.

At some point near the Hacienda's closing time the two Abeytas again confronted one another, though this time they did so outside the Lounge and their accounts of this critical meeting differ. Greg Abeyta testified at trial that appellant left the bar around 1:30 a.m. and that he left later, around 2:00 a.m. When approaching his car to head for home, Greg Abeyta stated that appellant overcame and twice stabbed him. Quite differently, appellant testified that he remembered the bartender ousting Greg Abeyta and him from the bar at the same time. Once outside,

* The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

according to appellant, Greg Abeyta came at him with something shiny he thought to be a knife or gun; afraid, he pulled out his own knife and "poked him." Appellant does "kind of" remember stabbing Greg Abeyta once, though he claims little recollection of causing the second wound Greg Abeyta suffered; "still up to this date," appellant stated at trial, "I can't figure out what really happened."

After the incident appellant obtained a ride to his mother's house but had trouble getting his key in the doorlock; his sister had to let him in. Once inside, appellant apparently told his mother that "I think I stabbed a guy [at the Hacienda Lounge]. I don't know what really happened. This guy threw us out. The bartender threw us out." He then fell asleep and two hours later when the police arrived to question him about the happenings at the Hacienda, it took his sister twenty minutes to arouse him. Once awake, appellant indicated that he thought he had indeed stabbed Greg Abeyta. The interviewing officer, other witnesses, and appellant's own behavior confirm that he was still quite intoxicated at this point. Indeed, the interviewing officer, Detective John Vigil, spoke to both Abeytas after the incident—appellant at his mother's home and Greg Abeyta at the hospital where he received treatment—and testified that he thought them equally drunk. We know from hospital tests that Greg Abeyta had a blood alcohol level of 0.31; a doctor informed the trial court that this is three times the legal limit for driving in New Mexico, that it is "a very high level of intoxication," and that some people become comatose with this quantity of alcohol in their systems.

Appellant was eventually indicted on one count of assault with a dangerous weapon with specific intent to do bodily harm, in violation of 18 U.S.C. § 113(c) and 1153.[1] At the close of trial, he asked the court to instruct the jury on self defense and on the New Mexico crime of aggravated assault. This latter instruction was proper, he argued, because the New Mexico offense is a lesser included offense of the federal crime of assault with a dangerous weapon with intent to do bodily harm, and because the Assimilative Crimes Act, 18 U.S.C. § 13, permits reference to state law crimes in federal court when federal law supplies no similar offense.[2] The court agreed to provide the self defense instruction but refused the proffered New Mexico aggravated assault charge, reasoning that a lesser included offense instruction would not be sensible on the facts of the case; given that it thought no lesser included instruction warranted, the court had no occasion to reach the question whether the New Mexico offense qualified for assimilation in federal court under 18 U.S.C. § 13. After receiving the court's instructions and conducting its deliberations, the jury returned a guilty verdict. This appeal followed with appellant arguing primarily that the trial court erred when it denied him the requested New Mexico lesser included offense instruction.

*Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973), stated the controlling law with respect to the obligation of federal courts to give a requested lesser included offense instruction:

> [I]t is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him

**1.** Section 113(c) provides that "[a]ssault with a dangerous weapon, with intent to do bodily harm and without just cause or excuse, [shall be punished] by fine of not more than $1,000 or imprisonment for not more than five years, or both." Section 1153(a) affords the federal courts jurisdiction over specified offenses, including assault with a dangerous weapon, committed by an Indian in Indian Country. Before us, it is uncontested that appellant is an enrolled member of the San Juan Indian Pueblo and that the Hacienda Lounge is located within the boundaries of the San Juan Reservation.

**2.** 18 U.S.C. § 13 provides: "Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

guilty of the lesser offense and acquit him of the greater. The Federal Rules of Criminal Procedure deal with lesser included offenses, see Rule 31(c), and the defendant's right to such an instruction has been recognized in numerous decision of this Court. *See, e.g., Sansone v. United States*, 380 U.S. 343, 349 [85 S.Ct. 1004, 1009, 13 L.Ed.2d 882] (1965); *Berra v. United States*, 351 U.S. 131, 134 [76 S.Ct. 685, 688, 100 L.Ed. 1013] (1956); *Stevenson v. United States*, 162 U.S. 313 [16 S.Ct. 839, 40 L.Ed. 980] (1896).

This obligation, the Court observed, arose because "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." *Id.*, at 212–213, 93 S.Ct. at 1997–1998.[3]

■ Cases in this court, as in other circuit courts, have provided district courts with considerable guidance regarding when a lesser included offense instruction is required. *See Fitzgerald v. United States*, 719 F.2d 1069, 1071 (10th Cir.1983); *United States v. Chapman*, 615 F.2d 1294, 1299 (10th Cir.), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980). Much like tests laid down by the District of Columbia and Eighth Circuits,[4] the *Fitzgerald* formulation provides that a lesser included offense instruction is to be given when [1] there is a proper request for one; [2] the lesser included offense consists of some, but not all, the elements of the

offense charged; [3] proof of the element or elements differentiating the lesser and greater offenses is a matter in dispute; and [4] a jury could rationally convict on the lesser offense and acquit on the greater offense. If each of these four elements can be satisfied, the district court must provide the instruction. *See, e.g., United States v. Pino*, 606 F.2d 908 (10th Cir.1979).[5]

■ On appeal from a trial court's application of the proper test, we review for abuse of discretion "[t]he decision of whether there is enough evidence to justify a lesser included offense charge...." *United States v. Chapman*, 615 F.2d 1294, 1298 (10th Cir. 1980) (citations omitted). Whether the offense on which the instruction is sought qualifies as a lesser included offense of the offense charged is a question of law which, as custom would have it, we review *de novo*. *See, e.g., United States v. Torres*, 937 F.2d 1469, 1476 (9th Cir.1991).

■ The first two steps of the *Fitzgerald* inquiry are, in the case before us, plainly satisfied. No one disputes that appellant requested an instruction on the New Mexico offense of aggravated assault. N.M.Stat. Ann. § 30–3–2(A).[6] Moreover, the purely legal question whether this New Mexico crime qualifies as a lesser included offense to the crime charged here—18 U.S.C. § 113(c)—has already been settled. Applying the "elements" test required by *Schmuck v. United*

---

**3.** The Court found it unnecessary to address the "difficult constitutional questions" that would arise if the statute at issue in that case were construed to bar a lesser included offense instruction. Some years later, the Court decided *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), which held that the Due Process Clause of the Fourteenth Amendment required that in capital punishment cases, state courts must grant a proper request for a lesser included offense instruction. This constitutional holding has not been extended beyond the capital punishment context.

**4.** *See, e.g., United States v. Brewster*, 506 F.2d 62 (D.C.Cir.1974); *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). The Ninth Circuit has composed a test that differs in form. *See, e.g.; United States v. Johnson*, 637 F.2d 1224 (9th Cir.1980) (establishing entitlement to a lesser included offense instruction

once [1] a lesser included offense is identified and [2] a rational jury could find defendant guilty on the lesser, but not the greater, offense).

**5.** The government is just as free as defendant to seek a lesser included offense instruction under *Fitzgerald*'s rules. *See Schmuck v. United States*, 489 U.S. 705, 717, 109 S.Ct. 1443, 1451, 103 L.Ed.2d 734 (1989). And, of course, the trial court may supply such an instruction on its own motion.

**6.** The New Mexico statute provides in pertinent part: "Aggravated Assault. Aggravated Assault consists of either: A. unlawful assaulting or striking another with a deadly weapon ..." As discussed in *United States v. Johnson*, 967 F.2d 1431, 1436 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993), New Mexico courts have held the statute does not require proof of specific intent.

*States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989), this Circuit in *United States v. Johnson,* 967 F.2d 1431, 1433 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993), held that

> [t]he federal offense of assault with a dangerous weapon requires proof of three elements: an assault, with a dangerous weapon, and with intent to do bodily harm. The New Mexico aggravated assault statute only requires proof of the first two elements.

The New Mexico crime, thus, is a lesser included offense of § 113(c) because, in *Schmuck's* parlance, its elements constitute a "subset of the elements of the charged offense." 489 U.S. at 716, 109 S.Ct. at 1450. It requires proof that both an assault took place and that a dangerous weapon was used, but does not require any showing that the defendant specifically intended to inflict bodily harm on his victim.[7]

■ The application of the third and fourth elements of the *Fitzgerald* test are where our work begins. Appellant argues that there was a dispute at trial over whether he acted with specific intent to do Greg bodily harm (as required by § 113(c)) or with only general intent (as required by the New Mexico statute) and that a rational juror could find he had acted with only the latter. Specifically, he contends that his voluntary intoxication was so severe that it prevented him from ever forming § 113(c)'s requisite specific intent to do bodily harm, though he concedes that it cannot protect him against a general intent crime such as New Mexico's. For support, appellant points to a long line of authority endorsing the notion that voluntary intoxication may "negate" the existence of specific, though not general, intent.[8] Given

7. There is one relevant matter that *Johnson* did not discuss and is not addressed by the parties here: Section 113(c) requires proof that a "dangerous" weapon was employed in the assault while the New Mexico crime demands a showing that a "deadly" weapon was involved. Since the state crime seems to require a higher standard of proof than the federal crime regarding the nature of the weapon employed, it appears to lose its qualification as a lesser included offense. *See Schmuck,* 489 U.S. at 716, 109 S.Ct. at 1450 ("where the lesser offense requires an element not required for the greater offense, no instruction is to be given. . . .").

But, an examination of state law exposes this appearance to be misleading. New Mexico has statutorily defined "deadly weapons" to include "weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted," and also as "any other weapons with which dangerous wounds can be inflicted." N.M.Stat.Ann. § 30–1–12(B). Thus, New Mexico has defined "deadliness" in terms of "dangerousness," the very term used in the federal law. And, we note that its statutory definition sounds very much like the definition of a "dangerous" weapon under federal law—an object capable of "endanger[ing] life or inflicting great bodily harm." *United States v. Johnson,* 324 F.2d 264, 266 (4th Cir.1963). *Cf. Hockenberry v. United States,* 422 F.2d 171 (9th Cir.1970).

In sum, though New Mexico and federal law use different semantic terms to describe the force required to support a conviction, they are substantively synonymous; consequently, the state crime can indeed qualify as a lesser included offense under *Schmuck.* We underscore that our conclusion is based on New Mexico's peculiar statutory definition of "deadly weapons" and is in no way meant to suggest that offenses utilizing the terms "deadly" and "dangerous" when describing the force or weapons employed by a defendant are always interchangeable.

8. *See, e.g., United States v. Fay,* 668 F.2d 375, 378 (8th Cir.1981); *United States v. Jim,* 865 F.2d 211, 212 (9th Cir.), *cert. denied,* 493 U.S. 827, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989); *United States v. Meeker,* 527 F.2d 12 (9th Cir.1975); *United States v. Molina–Uribe,* 853 F.2d 1193, 1205 (5th Cir.1988), *cert. denied,* 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *United States v. Williams,* 892 F.2d 296, 303 (3rd Cir. 1989), *cert. denied,* 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); *United States v. Scott,* 529 F.2d 338 (D.C.Cir.1975). *See also* 2 C. Torcia, *Wharton's Criminal Law* § 108 (14th ed. 1978).

We note that some commentators and courts, while recognizing the dominance of the rule that voluntary intoxication may negate a specific— though not a general—intent, have suggested eschewing this mechanical formulation in favor of asking simply whether the defendant's intoxication was so severe as to negate whatever intent is required by the crime charged. *See, e.g., United States v. Nix,* 501 F.2d 516 (7th Cir.1974); W. LaFave & A. Scott, *Criminal Law* 344 (1972). Other authorities have argued that voluntary intoxication should not be permitted to negate any mental element to a crime, even specific intent. *See, e.g., State v. Vaughn,* 268 S.Ct. 119, 232 S.E.2d 328 (1977). Appellant, however, does not call upon us to tackle these issues, but, rather, simply invokes the dominant rule that voluntary intoxication does indeed act as "defense" to, but only to, specific intent crimes. We will, thus,

the evidence adduced about his intoxication at trial, in sum, appellant claims he was entitled to have the jury consider the possibility of finding him innocent of § 113(c) and yet guilty of aggravated assault.

The District Judge disagreed, explaining that

[t]he testimony of the defendant is he did exactly what he wanted to do. And I think that takes out a lesser-included.

. . . . .

. . . It's his testimony that he got out his knife and stabbed [Greg], and that was certainly specific intent which was not bothered by the alcohol.

. . . . .

. . . I'm not going to give a lesser-included. The testimony is your only defense is self-defense. And the lesser-included just doesn't fit. His testimony is he got out his knife, he opened his knife, he poked him.

Transcript, Vol. II. at 278, 282, 283.

While we overturn a trial court's factual findings only if they amount to an abuse of discretion, we do think the court's findings in this case went over the line. In holding that appellant "certainly" acted with the specific design of doing Greg Abeyta bodily harm "which was not bothered by the alcohol," the trial court must have viewed the evidence as insufficient to support a verdict of guilt on the lesser New Mexico offense. In doing so the trial court took from the jury and decided for itself a hotly contested question, one on which rational jurors certainly could have disagreed. The record, after all, is rife with testimony that alcohol may have affected appellant's ability to appreciate the import of his actions. There is substantial, undisputed testimony that appellant was drunk as early as 6 p.m. and only grew more intoxicated as the evening wore on. There is testimony from a government witness to the effect that appellant's blood alcohol level was in the neighborhood of 0.31, enough to render some people comatose. Appellant's cohorts at the Hacienda confirm his severe impairment, as do his sister and mother and his own actions.

Appellant himself claimed at trial to be unable to recall all the events of the evening and portions of the stabbing itself due to his intoxication. On this evidence, it is beyond the pale to conclude that appellant assuredly acted with the deliberate intention to inflict bodily harm that "was not bothered by the alcohol." Even the government itself recognized early on at trial that "one of the issues here is going to be intoxication" and argued in closing that appellant's drunkenness did not negate the intent to do bodily harm.

The trial court believed, and the government argues, that even given his severe intoxication, appellant surely acted with specific intent to do bodily harm because he was able to pull his pocket knife out of his pocket and carefully open it before "poking" Greg Abeyta. Appellant's deliberate opening of his pocket knife may well suggest that appellant specifically wished to inflict bodily harm, but it is only one piece of evidence amongst many and not so utterly damning as to preclude a rational juror from finding appellant had no specific intent to do bodily harm. A drunk can open a knife deliberately, yet strike another with it motivated by only general malice or even just acting recklessly. In this regard, we note that this court has upheld the provision of a lesser included general intent instruction in an intoxication case even though the defendant had loaded a gun, charged a police officer, and fired several shots. *See Johnson,* 967 F.2d 1431.

The trial court also believed that appellant's claim of self defense precludes him from arguing that he was too drunk to act with specific intent. If he acted intentionally to defend himself, we are told, it just "doesn't fit" to think him too drunk to appreciate the import of his actions. Such an argument, however, overlooks the fact that appellant is entitled to instructions on *any* defense, including inconsistent ones, that find support in the evidence and the law and "[f]ailure to so instruct is reversible error." *United States v. Scafe,* 822 F.2d 928, 932 (10th Cir.1987).

proceed onward in this controversy accepting this rule as it is, though leaving open the possibil-

ity of returning to the issue of its wisdom if and when called to do so in another case.

*See also Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896); *United States v. Fay,* 668 F.2d 375, 377–78 (8th Cir.1981). The fact that appellant stated in portions of his testimony that he was trying to defend himself does not negate the fact that elsewhere in his testimony he indicated that he did not recall many events of the evening and was highly intoxicated, nor does it cancel out the testimony of so many other witnesses who remarked on appellant's severe state that evening. On the substantial record of intoxication developed here the defense was entitled to argue, without judicial interference, that even if the jury did not accept appellant's self defense explanations it could still consider whether he was so intoxicated that he could not form the intent to do bodily harm necessary to convict him under § 113(c).

■ To this point, we have assessed the trial court's stated reasons for denying appellant's requested instruction on New Mexico law. On appeal, the government has argued that, even if we find its arguments for denying a lesser included offense instruction unconvincing, we can and should nonetheless affirm the trial court on alternative grounds. The government recalls that appellant's argument before the trial court for the reading of the New Mexico instruction depended not only on the state crime being a lesser included offense of § 113(c), but also upon it being assimilable in federal court under the Assimilative Crimes Act, 18 U.S.C. § 13, *see supra* at 472. Under this court's interpretation of that Act, for an instruction on a state criminal offense to be permissible, there must be a "gap" in the federal criminal code—*viz.* a state offense instruction is proper only if there exists no federal offense proscribing the same conduct that might be read to the jury. *Johnson,* 967 F.2d at 1433. *See also*

*United States v. Gibson,* 880 F.2d 795, 796 (4th Cir.1989). And, the government submits, there is a general intent assault crime in the federal criminal code that might have been used here, one that would have obviated any need for referencing the New Mexico law. *See* 18 U.S.C. § 113(f).[9] Simply put, because there is no "gap" in the federal scheme regarding general intent assaults, appellant could, at best, only have received a § 113(f) instruction read to the jury and was never entitled to the New Mexico state instruction he sought.

We decline to pass on this argument at this juncture. The question whether § 113(f) might cover the facts of this case implicates, at least in part, serious factual issues, ones that the trial court has not yet had a chance to pass upon since the government raised the Assimilative Crimes Act issue for the first time on appeal. We think the prudent course here not to attempt to deal with this fact-intensive inquiry for ourselves, but to remand the matter for the trial court's determination in the first instance.

On remand, then, the government is free to raise the assimilation issue. If it does so and the trial court agrees that no reference to New Mexico law is permitted here, it might simply reaffirm its judgment on the § 113(c) offense; that matter would then be ripe for our review.[10] If, on the other hand, the government does not choose to raise the issue, or if the trial court determines that assimilation of the New Mexico aggravated assault statute is proper, the court will have two options. It might enter a judgment of conviction on the New Mexico offense since, after all, the trier of fact necessarily found every fact required for conviction under that statute. *See United States v. Burns,* 624 F.2d 95, 105 (10th Cir.1980); *United States v. Whitaker,* 447 F.2d 314, 322 (D.C.Cir.1971). Alternatively, if the court considers it in the interest of justice, it may order a new trial.

9. Section 113(f) states that an "assault resulting in bodily injury [shall be punished by a] fine of not more than $10,000 or imprisonment for not more than ten years, or both."

10. The trial court might simply affirm the § 113(c) conviction because appellant never requested a § 113(f) instruction and, in any event, does not wish one since § 113(f) carries with it a higher potential penalty than § 113(c).

Now, appellant does argue before us that an error infects his conviction which precludes any reliance upon it, such as *Burns* and *Whitaker* would otherwise permit. Specifically, in a Fed.R.Crim.P. 33 new trial motion, appellant alleges that the jury was able to rely improperly upon extrinsic evidence in its deliberations—here a juror's personal pocket knife in a pantomimed reenactment of the events outside the Hacienda. The District Court passed upon and denied appellant's motion on this score, however, and on review we see no abuse of discretion in that denial. Even assuming, as the District Court did, that the motion was timely filed, the role of extrinsic evidence here was so clearly less prejudicial than in recent Tenth Circuit cases appellant relies upon—such as *United States v. Wood,* 958 F.2d 963 (10th Cir.1992) where the jury was able to view the prosecutor's personal notes, or *Johnston v. Makowski,* 823 F.2d 387 (10th Cir.1987), *cert. denied,* 484 U.S. 1026, 108 S.Ct. 750, 98 L.Ed.2d 763 (1988), where the jury was able to see a police report that had not been admitted in evidence—we think this result rather plain. There is simply no constitutional command preventing a jury from using common sense and ordinary and uninflammatory props to reenact a crime in the privacy of the jury room. *See United States v. Hephner,* 410 F.2d 930, 936 (7th Cir.1969) ("Jurors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdict.").

We remand the case for further proceedings consistent with this opinion.

*So ordered.*