**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Mary M.M. HOFFNER, M.D.,**
**Defendant/Appellant.**

**No. 84–2464.**

United States Court of Appeals,
Tenth Circuit.

Dec. 2, 1985.

---

Norman R. Mueller, Haddon, Morgan & Foreman, P.C., Denver, Colo. (Harold A. Haddon with him on brief), for defendant/appellant.

Raymond P. Moore, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on brief), for plaintiff/appellee.

Before BARRETT and SEYMOUR, Circuit Judges, and GREENE *, District Judge.

BARRETT, Circuit Judge.

Mary Hoffner, M.D., (Appellant or Dr. Hoffner), was convicted of violating 21 U.S.C. § 841(a)(1) and 21 C.F.R. § 1306.-04(a), distributing controlled substances (Schedule II), pursuant to prescriptions not issued for a legitimate medical purpose. Dr. Hoffner was acquitted on two counts of the indictment, but convicted on fifteen counts by virtue of a jury verdict rendered September 6, 1984. She appeals from the judgment of conviction.

## FACTS

In November of 1983, during a survey of pharmacies in the Fort Collins, Colorado, area DEA investigators were alerted to large numbers of Schedule II prescriptions being written by Dr. Hoffner. At that time a special DEA agent was assigned to the case to pose as a patient who needed diet pills. The agent was issued prescrip-

---

* Honorable J. Thomas Greene, United States District Court for the District of Utah, sitting by designation.

tions by Dr. Hoffner for large amounts of Seconal, Biphetamine, and Valium over a short period of time.

At trial, the government established its case against Dr. Hoffner through the testimony of the special DEA agent, several expert witnesses, and a former patient of Dr. Hoffner's who also had been issued prescriptions for large quantities of Quaalude and Ritalin. It was determined that Dr. Hoffner was charging $100.00 per visit to those who had received prescriptions for large quantities of drugs while regular patients were charged only $30.00. Patients who had received the large quantity prescriptions were also told to go to different pharmacies when filling their prescriptions to avoid suspicion. Dr. Hoffner told these patients the names of diseases for which they could say they were being treated if a druggist should ask. Dr. Hoffner testified, though, that these patients did not actually suffer from these ailments.

On appeal Dr. Hoffner raises two issues: (1) whether the trial court properly excluded lay opinion testimony from three defense witnesses who sought to testify about whether or not Dr. Hoffner issued the prescriptions for a legitimate medical purpose; and (2) whether the jury was properly instructed concerning intent.

## I. THE LAY OPINION TESTIMONY

Dr. Hoffner argues that the trial court committed reversible error when it did not allow three lay witnesses to answer the following question, "whether, in your opinion, Dr. Hoffner intended to issue these particular prescriptions for a legitimate medical purpose?." The three witnesses were offered as lay witnesses although one was a medical doctor [1] and two were nurses and long-time employees of Dr. Hoffner. In each instance, as defense counsel tried to elicit this lay opinion testimony the government made a timely objection which was sustained by the court. The trial court excluded this testimony on the following

grounds: (1) a lay person cannot render an opinion as to whether an accused would commit a crime based on observations of character and practice; and (2) that a lay person cannot testify as to another's specific intent in a particular instance.

First, the admission of lay opinion testimony is within the sound discretion of the trial court and will not be overturned on appeal absent a clear abuse of discretion. *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847 (10th Cir.1979), *Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir.1981), and *United States v. Ness*, 665 F.2d 248, 249–50 (8th Cir.1981).

Second, F.R.E. 701 permits the admission of lay opinion testimony provided that it meets two criteria: (1) it must be rationally based on the perception of the witness, and (2) it must be helpful to a clearer understanding of the witness' testimony or the determination of a fact in issue. The perception requirement stems from F.R.E. 602 which requires a lay witness to have firsthand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact.

In most instances, though, courts have been very liberal in admitting witnesses' testimony as to another's state of mind if the witness has had sufficient opportunity to observe the accused so as to draw a rational conclusion about the intent of the accused. *See e.g., United States v. Smith*, 550 F.2d 277, 278 (5th Cir.), *cert. denied*, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977), where a fellow employee was allowed to testify that the defendant had knowledge of certain CETA regulations which he was charged with violating. The witness had worked in the same office with the accused during the entire period of his employment; *Bohannon v. Pegelow*, 652 F.2d 729, 731–32 (7th Cir.1981), where a witness who had observed an altercation and arrest was allowed to testify that she thought the policeman's actions were moti-

---

**1.** Although the doctor was offered as a lay witness, Dr. Hoffner suggests that she could be considered as an expert witness. However, what was not presented to the trial court will not be considered for the first time on appeal.

vated by racial prejudice; *United States v. McClintic*, 570 F.2d 685, 690 (8th Cir.1978), where the witness was allowed to testify that the defendant knew the goods he had received were fraudulently obtained because the defendant and the witness had discussed the scheme for obtaining the goods immediately prior to their receipt; and *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 263 (5th Cir. 1980), where the witness worked closely with the defendant and overheard many of the defendant's phone conversations. The witness drew the inference that the defendant was an agent of a co-defendant. This testimony was admitted because the court found that the witness had had sufficient contact and personal knowledge to be qualified to give an opinion.

■ Although most courts opt for the broad admissibility of lay opinion, that does not mean that all such testimony ought to be indiscriminately admitted. Determination of the preliminary questions of perception and helpfulness are within the discretion of the trial court. Here the court accepted offers of proof outside of the hearing of the jury to determine these preliminary matters. After learning that none of the witnesses had been present in the examining room when any of the patients who had received the improper prescriptions were with Dr. Hoffner, the court concluded that their opinions as to the doctor's intent were not based on any rational perceptions or observations. We agree. These witnesses did not overhear any conversations between the patients and Dr. Hoffner, nor did they witness any physical examinations or the actual writing of these prescriptions. Their opinions could not have been based on any concrete facts but amount only to speculative conclusions.

As for the helpfulness to the jury, the second requirement of F.R.E. 701, "[a]n appellate court is hardly in a position to reevaluate, based on a cold record, the helpfulness of certain testimony.... The trial judge's decision on such issues must be a clear abuse of discretion to justify a reversal and a new trial." *Bohannon, supra* at 732. This aptly summarizes our view. We find no clear abuse of discretion by the trial court in excluding such testimony.

■ Dr. Hoffner also protests that government experts were allowed to testify as to their opinions about whether the prescriptions were issued for a legitimate medical purpose and therefore, Dr. Hoffner's lay witnesses' testimony on this issue should be admissible. We need not expand on the proposition that the admissibility of expert opinion testimony and lay opinion testimony is governed by different standards. See F.R.E. 701, 702, and 703. Admitting certain expert testimony does not provide Dr. Hoffner with carte blanche to introduce any and all lay testimony to counter the government's evidence. The rules of evidence were correctly applied by the trial court in excluding the lay opinion testimony.

## II. INSTRUCTIONS ON INTENT

Dr. Hoffner also alleges that the jury instructions concerning intent were ambiguous, left the jury confused, and allowed the jury to convict without realizing that specific intent must accompany any violation of 21 C.F.R. 1306.04(a)—(prescribing without a legitimate medical purpose). Dr. Hoffner's counsel offered her preferred version of jury instructions but this version was not selected by the trial court when the jury was charged.

■ A defendant is entitled to instructions which fairly present his theory of the case. *United States v. Hudler*, 605 F.2d 488, 490 (10th Cir.), *cert. denied* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1979). However, the exact language requested by the defendant need not be given. *United States v. Muse*, 708 F.2d 513, 515–16 (10th Cir.1983). It is enough that the instructions as a whole give an accurate statement of the law. *United States v. Rothbart*, 723 F.2d 752, 754 (10th Cir.1983).

■ The trial court enumerated all of the essential elements of the charged offenses. The jury was instructed that the

government had to prove beyond a reasonable doubt that the defendant acted knowingly and intentionally in relation to *each* count before a guilty verdict could be returned. Additionally, the court explained the terms embodied in the indictment. The terms "distribute", "delivery", "specific intent", and "knowingly" were defined. We conclude that the jury instructions, taken as a whole, correctly charged the jury and did not result in misunderstanding or confusion.

AFFIRMED.