**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 4 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARCUS I. SAIN,

    Defendant-Appellant.

No. 97-3218
(D.C. No. 96-CR-10091-001)
(DISTRICT OF KANSAS)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **MURPHY**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

After examination of the briefs and record in the above captioned case, the three judges to whom this case had been assigned for oral argument were unanimously of the opinion that oral argument was not needed. Accordingly, the court ordered the case to be submitted for disposition on the briefs pursuant to Fed. R. App. P. 34(a) and 10th Cir. R. 34.1.9, and excused counsel from orally arguing the case on March 20, 1998.

By indictment filed December 18, 1996, Marcus I. Sain was charged in one count

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

with knowingly possessing a firearm, namely, a semiautomatic handgun, which had been shipped and transported in interstate commerce, at a time when he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). A jury convicted Sain of the crime thus charged and he was sentenced to imprisonment for 51 months to run consecutively to two state sentences. Sain appeals. We affirm.

On appeal, Sain raises two issues: (1) the evidence is legally insufficient to support his conviction, and (2) the trial court erred in refusing to incorporate in its instructions concerning the credibility of witnesses certain language tendered by defense counsel. We find no error.

The jury was instructed that the essential elements of the crime charged in the indictment were as follows:

INSTRUCTION NO. 18

In order to sustain its burden of proof for the offense charged in Count I, the government must prove the following three essential elements beyond a resonable doubt:
One, that prior to November 5, 1996, defendant Marcus Sain had been convicted of a crime punishable by imprisonment for a term exceeding one year;
Two, that on or about November 5, 1996, defendant Marcus Sain knowingly possessed the firearm described in the indictment; and
Three, that such possession was in or affecting interstate or foreign commerce.

On appeal, counsel concedes that the evidence adduced by the government at trial

supports a finding that as of November 5, 1996, Sain had been convicted of a crime punishable by imprisonment for a term exceeding one year. That was stipulated to by trial counsel. Further, counsel on appeal concedes that the evidence supports the jury's determination that the gun found in the back seat of the vehicle Sain was driving had been in interstate commerce. There was government testimony that the weapon was manufactured in Brazil, had been brought into the United States by an importer in Miami, Florida, and somehow found its way to Wichita and into the back seat of the vehicle Sain was driving when stopped by the Wichita police.

As indicated, counsel, however, does argue that the evidence is legally insufficient to support the jury's determination that on November 5, 1996, Sain knowingly possessed the firearm described in the indictment. In thus arguing, counsel's position is that Michael Young, the night manager of the game room, Carter Brengman, a patron of the game room, and Officer Todd Porter, a Wichita policeman, were all "mistaken" and incorrect in their testimony given at trial. Let us examine the government's case with a bit of detail.

The government's evidence showed generally that Sain, his brother, Robert Taylor (Taylor's father was at the time married to Sain's mother), Sain's girlfriend and two of her girlfriends were patronizing the Family Game Room in Wichita, Kansas, which is a family entertainment center that has pool tables, video games and light refreshments. Sain, incidentally, had shoulder-length hair and Taylor had short hair. As the five left the

Family Game Room, an "encounter" occurred with others in the game room. Sain's girlfriend apparently told Sain that a man in the game room had been harassing her, and Sain promptly confronted the other individual. Words were exchanged and blows were struck. After what was a relatively short confrontation, Sain and his group exited the game room into the parking lot and a few minutes later left by automobile.

Before the group left, Michael Young, the night manager at the Family Game Room, looked into the parking lot from inside the game room and saw that the man with short hair was still screaming. Young also testified that he saw the man with the long hair go to a vehicle, reach under the front seat, then "stood right back up in the middle of the parking lot" and that he then "walked from the third stall to almost the edge, back three times, three passes, just real nervous walk, and the whole time carrying a small pistol against his thigh."

Carter Brengman, a patron who was in the Family Game Room, testified that he was talking to Young, the night manager, when "one guy with long hair started yelling at another guy." Moments later, after the long-haired man and his group had left, Young told everyone left in the room to get back because somebody outside had a gun. Brengman stated that he looked out the window, saw the "guy with the long hair with a gun to his side, in his right hand . . . walk back and forth away from the car, three or four times."

Young reported the matter to the local police and was able to give the police the

license number of the car. The car was stopped moments later by the police. Officer Porter testified that as he approached the vehicle, he noticed the driver, who turned out to be Sain, appear to pass an object to a male person who was seated in the back seat directly behind the driver. Porter said the man in the back seat, who later was determined to be Taylor, appeared to accept the object, put both hands behind his back and fidget.

After the occupants of the vehicle, on command, exited the car, Officer Porter asked permission to search the car, to which request Sain agreed. In the ensuing search Porter removed the seat cushion where Taylor had been seated and found a silver automatic handgun with wood grips. Porter testified the gun was loaded and had one round in the chamber. Sain and Taylor were later transported back to the Family Game Room, where Young and Brengman identified the one with the shoulder-length hair, who was Sain, as the one they saw with a handgun in his hand and carried alongside his thigh in the parking lot a relatively short time prior thereto.

The defense called two witnesses, Taylor and Sain's girlfriend. Taylor denied that there was any gun present or carried by Sain, or anyone else, in the incident above described. However, he went on to testify that a day or two after the incident he found that one of his personal guns was missing and thought that it might have slipped out of an overnight bag some time when he was riding as a passenger, in the rear seat of Sain's vehicle. The girlfriend testified about the harassment incident at the Family Game Room. She also testified that the vehicle in which they were stopped by the police was actually

registered to her.

The evidence, in our view, supports the jury's determination that Sain knowingly possessed a firearm on November 5, 1996. The inconsistencies that counsel perceives in the testimony of Young, Brengman and Porter do not relate, as such, to the central issue of whether Sain, a felon, knowingly possessed a firearm which had been in interstate commerce. In *U.S. v. Wilson,* 107 F.3d 774, 778 (10th Cir. 1997), we spoke as follows:

> "'Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government.' Rather than examining the evidence in 'bits and pieces,' we evaluate the sufficiency of the evidence by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.' Thus, we must affirm the convictions if the 'collective inferences' from the totality of that evidence could have led a reasonable jury to find beyond a reasonable doubt that Mr. Wilson possessed the requisite knowledge and intent for the underlying crimes." (Citations omitted.)

On appeal, counsel also argues that the trial court erred in not incorporating into the instructions which the court did give the jury on the matter of witness credibility, certain language which trial counsel asked be included. In this connection, the district court instructed the jury as follows:

INSTRUCTION NO. 6

> You are the exclusive judges of the facts proved, the weight of the evidence, and the credibility of the witnesses. In weighing the testimony of the witnesses, you have a right to consider their appearance and manner while testifying, their

means of knowledge, apparent intelligence or ignorance, interest or want of interest in the outcome of the case, and all other facts and circumstances appearing in the trial which will aid you in arriving at the truth. If you believe that any witness has willfully testified falsely as to any material fact, you may disregard the whole or any part of his testimony; but you are not bound to believe or disbelieve all the testimony of any witnesses.

When weighing conflicting testimony you should consider whether the discrepancy has to do with a material fact or with an unimportant detail, and should keep in mind that innocent misrecollection--like failure of recollection--is not uncommon.

INSTRUCTION NO. 7

A witness may be discredited or "impeached" by contradictory evidence, by a showing that he testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony.

If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

The language which trial counsel sought to have included in the foregoing instructions ran somewhat as follows: "Did the witness have the opportunity and ability to observe accurately the thing he or she testified about?" Nothing more. The district court denied counsel's request, holding that the instructions given adequately covered the matter. We agree.

A defendant is, of course, entitled to an instruction on his theory of the case.

However, counsel concedes that this does not mean that the "exact language" requested by a defendant need necessarily be given, so long as the matter is covered by other language. *United States v. Hoffner,* 777 F.2d 1423, 1426 (10th Cir. 1985).

The gist of the defense was that Sain never knowingly possessed a firearm on November 5, 1996, and that Young and Brengman were simply mistaken when they testified that he did. Further, counsel argues that Officer Porter was also mistaken in his testimony that Sain seemed to pass an object to Taylor, in the back seat behind the driver, and that Taylor accepted the object, placed both hands behind his back, and fidgeted, as if he were concealing it. We note that there is no suggestion that a handgun was not found in the back seat of the vehicle Sain was driving, wedged down between the rear seat and the back thereto. It was there.

As indicated, the instructions given were broad enough to permit counsel to make unrestrained argument to the jury that Young, Brengman and Porter were all mistaken. There was no error in this regard.

In sum, for us to set aside the jury's verdict would be an usurpation of the jury's prerogative to find the facts. And the instructions given were clearly adequate.

Judgment affirmed.

ENTERED FOR THE COURT,


Robert H. McWilliams
Senior Circuit Judge

- 8 -