**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JONATHAN BENALLY,

      Defendant - Appellant.

No. 96-2296
(D.C. No. CR-95-584-SC)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McWILLIAMS** and **LUCERO**, Circuit Judges.

      Jonathan Benally seeks the reversal of a jury verdict finding him guilty of

second degree murder.  He asserts that the district court erred in instructing the

jury on voluntary manslaughter and improperly denied his request for an

instruction on involuntary manslaughter.  Additionally, defendant argues that the

district court abused its discretion by refusing to reduce his offense level for

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

acceptance of responsibility. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

On the night of October 3, 1995, Jonathan Benally, Arvin Benally and Rodrick Benally gathered at Arvin's house in Shiprock, New Mexico to talk and drink. After consuming a quart of malt liquor each, they drove to the Thriftway store in nearby Hogback to purchase three more quarts for the group. At the store they met up with Cheryl Largo and her sister, Christina Talk. The five decided to drive to a hill near Shiprock to talk, drink and listen to music. Shortly thereafter, Jonathan and Arvin left to purchase a half pint of whiskey. While Jonathan and Arvin were gone, Russell John, who lived nearby, walked up to Rodrick, Cheryl and Christina, introduced himself and offered them some vodka.

When Jonathan and Arvin returned, the four men engaged in friendly conversation. After finishing his vodka, Russell asked if anyone wanted to go on a beer run and stated that he had $20. He then offered to get marijuana for the group and left.

While Russell was gone, Jonathan proposed that they should take the $20 when he returned. Arvin agreed. When Russell returned, he admitted that did not have any marijuana. According to Rodrick, both Jonathan and Arvin were upset at this news. Rodrick testified at trial that Jonathan suddenly threw Russell to the

ground "for no apparent reason." R., Vol. V, at 164-65. Russell then threw an object at Jonathan and missed. He got back to his feet and started wrestling Jonathan. He then threw a punch, striking Arvin in the face and knocking his glasses off.

Jonathan tackled Russell, sat on top of him and proceeded to punch him repeatedly in the face. Arvin struck and kicked Russell before Rodrick restrained him. When Rodrick turned to restrain Jonathan, Arvin struck Russell again. Once again Rodrick restrained Arvin and Jonathan renewed his attack. Jonathan then proceeded to pull down Russell's pants and kick him in the groin. The two men then rolled Russell onto his stomach. Arvin kicked Russell and again was restrained by Rodrick. Jonathan then made cutting and stabbing motions on Russell's buttocks and searched through his pants. He then stood and kicked Russell some more.

After the fight, they left Russell on the hill and all five met at the local junior high school. They agreed to lie as to their whereabouts that night. At trial, a statement made by Cheryl to the police was read to the jury. In that statement, she recounted that at the school, Jonathan "looked at his fist and kept saying that's what he likes to see." R., Vol. VI, at 226. She testified at trial that his fist was bloody. Christina, in a statement read to the jury, recalled that Jonathan "kept bragging that they did killed that guy." Id. at 261.

Arvin and Rodrick then returned to the hill to search for Arvin's glasses. According to Rodrick's testimony, Arvin wanted to strike Russell again, but Rodrick stopped him. Rodrick also testified he could not hear Russell breathing.

The next morning, Russell's wife and her sister discovered his body. He was lying face down with his pants around his ankles. At trial, the forensic pathologist who examined the body testified that death resulted from blunt force injuries to the head and neck which produced herniation of the brain, that is, his brain swelled through the base of his neck. The swelling was caused by bleeding in the head and neck area and from a fractured voice box which hampered breathing, blocking oxygen flow to the brain.

After a police investigation, Jonathan was charged with first degree murder in violation of 18 U.S.C. §§ 1153[1] & 1111(a), and aiding and abetting first degree murder in violation of 18 U.S.C. § 2. At the conclusion of the jury trial, the district court instructed the jury as to first degree murder as well as to the lesser included offenses of second degree murder and voluntary manslaughter. The jury returned a verdict of guilty as to second degree murder.

**II**

---

[1]Section 1153 provides for the application of select criminal laws (including murder and manslaughter) to crimes by Native Americans in Indian country. At trial, it was stipulated that both Jonathan Benally and Russell John were enrolled members of the Navajo tribe and that the alleged offense occurred within the boundaries of the Navajo Indian Reservation in the state of New Mexico. See R., Vol. VI, at 288-89.

Defendant argues that the district court improperly instructed the jury on voluntary manslaughter. The jury was instructed that,

> [V]oluntary manslaughter is the unlawful killing of a human being without malice upon a sudden quarrel or a heat of passion. . . . The difference between second-degree murder and voluntary manslaughter is sufficient provocation. . . . Sufficient provocation reduces second-degree murder to voluntary manslaughter. Sufficient provocation can be any action, conduct, or circumstance which arouse[s] anger, rage, fear, sudden resentment, terror, or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition.

R., Vol. VII, at 388-89. Defense counsel objected to the court's definition of provocation: "I'm concerned that the real standard is — the real standard regarding the matter of provocation that you've [instructed] is for a reasonable person in the same or similar circumstances." Id. at 421.

Because the district court is granted substantial latitude and discretion in tailoring and formulating jury instructions, we uphold its exercise of discretion as long as the instructions as a whole are correct statements of the law and fairly cover the issues presented. See United States v. Bryant, 892 F.2d 1466, 1468 (10th Cir. 1989). In reviewing defendant's claim, we must decide not whether the instruction was faultless, but whether the jury was misled in any way and whether it had an understanding of the issues. United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.), cert. denied, 117 S. Ct. 226 (1996). Under this standard of review, we cannot conclude that the instruction given by the district court was confusing

or legally incorrect.  Cf. United States v. Collins, 690 F.2d 431, 437 (5th Cir. 1982) ("the provocation must be such as would arouse a reasonable and ordinary person to kill someone") (citing United States v. Chapman, 615 F.2d 1294 (10th Cir. 1980)); United States v. Eagle Elk, 658 F.2d 644, 649 (8th Cir. 1981) (sufficient provocation is that which "would cause the ordinary reasonable person to act rashly and without deliberation and reflection") (citing 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 41.14 (1977)).  Defendant's claim is essentially a dispute over word choice, and it is well-established that a defendant is not entitled to any specific wording of instructions.  United States v. Hoffner, 777 F.2d 1423, 1426 (10th Cir. 1985).  The district court's instructions, taken as a whole, properly informed the jury of the law and were not misleading.

Defendant raises for the first time on appeal a second claim related to this instruction.  Because he failed to object to the instruction on this basis at trial, we review only for plain error.  See United States v. Mason, 85 F.3d 471, 472 (10th Cir. 1996).  He claims that the district court erred when it stated that, "the difference between second degree murder and voluntary manslaughter is sufficient provocation."  R., Vol. VII, at 388.  Defendant contends that "the most critical and defining characteristic of voluntary manslaughter is . . . intent without malice," not "sufficient provocation." Appellant's Br. at 13.  Sufficient provocation and malice are, however, closely related: sufficient provocation

negates malice. See United States v. Scafe, 822 F.2d 928, 932 (10th Cir. 1987) ("Malice is negated by the heat of passion."); see also United States v. Browner, 889 F.2d 549, 552 (5th Cir. 1989) ("The malice that would otherwise attach is negated by the fact that the intentional killing occurred in the heat of passion in response to a sufficient provocation.") (citing Scafe, 822 F.2d at 932). Thus, we cannot conclude that the instruction was an erroneous statement of law, much less plainly erroneous.

### III

At the close of trial, defendant requested that the jury be instructed on the lesser included offense of involuntary manslaughter, which is defined as the "unlawful killing of a human being without malice . . . [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). Defendant tendered a proposed instruction and objected to the district court's refusal to so instruct the jury. See R., Vol. VII, at 421. On appeal, he claims that by not instructing on involuntary manslaughter, the district court abused its discretion.

A lesser included offense instruction is to be given when "[1] there is a proper request for one; [2] the lesser included offense consists of some, but not all, the elements of the offense charged; [3] proof of the element or elements

differentiating the lesser and greater offenses is a matter in dispute; and [4] a jury could rationally convict on the lesser offense and acquit on the greater offense." United States v. Abeyta, 27 F.3d 470, 473 (10th Cir. 1994). "On appeal from a trial court's application of the proper test, we review for abuse of discretion '[t]he decision of whether there is enough evidence to justify a lesser included offense charge. . . .'" Id. (quoting Chapman, 615 F.2d at 1298.)

It is undisputed that defendant properly requested an involuntary manslaughter instruction, see R., Vol. VII, at 421, and that involuntary manslaughter is a lesser included offense of the offense charged, see United States v. Quintero, 21 F.3d 885, 890-91 (9th Cir. 1994). Defendant claims that the closely-related third and fourth prongs of the Abeyta test are satisfied because sufficient evidence was presented at trial to support a jury finding that either he killed the victim in the commission of a misdemeanor or, alternatively, that the killing was the result of self-defense.

Defendant's first argument is that an instruction on involuntary manslaughter was required because the death of Russell John occurred during the commission of aggravated battery, a misdemeanor under New Mexico law. See N.M. Stat. Ann. § 30-3-5(B) (Michie 1978) (defining misdemeanor aggravated battery as infliction of an injury not likely to cause death or great bodily harm, but which does cause painful temporary disfigurement or temporary loss of the

functions of an organ or member).  Defendant's rationale is that the Indian Major Crimes Act provides that if a crime made applicable under the Act is "not defined and punished by Federal law in force," the offense "shall be defined and punished in accordance with the laws of the State in which such offense was committed . . . ."  18 U.S.C. § 1153(b).  This argument ignores the fact that both manslaughter and assault are defined and punished by federal law.  See 18 U.S.C. §§ 1112 (manslaughter) & 113 (assaults).  The assault that resulted in the death of Russell John is a felony under federal law.  See 18 U.S.C. §§ 113(a)(6) (assault resulting in serious bodily injury) & 1365(g)(3) (defining "serious bodily injury" as involving substantial risk of death or extreme physical pain); see also United States v. Hatatley, 130 F.3d 1399, 1404 (10th Cir. 1997).  We note that defendant does not contend that the assault which resulted in the death of Russell John could be characterized as a misdemeanor under federal law.

Alternatively, defendant contends that the lesser included offense instruction was required because the evidence supported a jury verdict that he killed Russell John in the commission of a lawful act in an unlawful manner — an "imperfect or equivocal assertion of self defense."  Appellant's Br. at 15.  However, no evidence whatsoever was presented at trial that defendant acted in self defense.  Defendant testified on his own behalf, and on direct examination he was asked to describe how the fight began.  He replied,

It — it all started when Mr. John kept asking me to make him a [beer] run, and I — but I kept telling him that it wasn't my truck, that I wasn't driving, and that it was well past closing time.

So he kept asking me, and asking me to make him a run, and once in a while he would leave. He'd walk off from me, . . . but he'd come back and ask me again, and I'd tell him the same thing.

But after a [] while he started to get closer where — which he would come up to my face or he'd be so close to my face that he'd be spitting on me and to try to tell me to make him a run.

So I — I warned him. I told him, [d]on't do that, because that is something I don't like people doing. So I slightly pushed him away with my forearm the first time, and he kept — he kept doing that. He kept doing the same thing. So I pushed him away several times, and upon which I believe the last — the last push I gave him, he tripped over his feet, he fell over, and he got back up, and he started to fight — or he punched Arvin, and Arvin punched back, I guess, putting him in a daze.

R., Vol. VI, at 350. Defendant admitted punching Russell hard in the face and kicking him. Id. at 351-52. He also testified that Russell did not hurt him while resisting his blows. Id. at 353. On cross-examination, the prosecutor asked defendant if Russell was punching back when defendant was kicking him. Id. at 369. Defendant answered no, and admitted that Russell was a "steady target." Id. We find no abuse of discretion in the district court's decision that there was no evidence to support a rational jury finding that defendant was acting in self-defense, even if imperfectly or unlawfully.

-10-

## IV

Defendant claims that the district court erred by refusing to grant him an offense level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  We review the district court's decision not to grant a reduction for acceptance of responsibility for clear error.  United States v. McMahon, 91 F.3d 1394, 1396 (10th Cir.) cert. denied, 117 S. Ct. 533 (1996).  Defendant must prove by a preponderance of the evidence that he is entitled to the offense level reduction.  Id. at 1396-97.

Section 3E1.1 of the Sentencing Guidelines provides for a two level decrease "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  The commentary to this section states, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  U.S.S.G. § 3E1.1, application note 2.  The commentary also notes that "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. . . . In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."  Id.

Defendant contends that a reduction of his offense level is merited because he cooperated with the homicide investigation and testified at trial, admitting that he was an alcoholic and that he had punched and kicked the victim. Admission of wrongdoing, however, is insufficient to entitle the defendant to an adjustment for acceptance of responsibility. See McMahon, 91 F.3d at 1397.

Defendant, at trial, contested the factual elements of his guilt. The defense's theory of the case was that the victim's death was caused, not by defendant's actions, but by those of Arvin Benally or one of the other individuals present the evening of the homicide. See R., Vol. VI, at 339. Defendant, when he testified, also denied that he had the requisite intent to commit murder. Id. at 361. This is not the rare situation in which a downward adjustment is merited even though defendant exercised his right to a trial. Defendant has failed to meet his burden of showing entitlement to the adjustment and we conclude that the district court acted properly.

For the foregoing reasons, the district court's judgment is AFFIRMED.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

-12-