NOT DESIGNATED FOR PUBLICATION

No. 127,214

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW CALVIN HOWE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Republic District Court; KIM W. CUDNEY, judge. Submitted without oral argument. Opinion filed January 23, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Justin Ferrell*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BRUNS and COBLE, JJ.

CLINE, J.: In this appeal, Matthew Calvin Howe challenges the district court's denial of his pretrial motion for substitute counsel and its admission of certain evidence at his jury trial. He claims the court abused its discretion before trial when it found that he failed to demonstrate justifiable dissatisfaction with his counsel, and at trial when it admitted (1) charging documents from two pending cases and (2) testimony from two witnesses. After reviewing the record, we see no error and affirm his four convictions for statutory rape.

FACTUAL AND PROCEDURAL BACKGROUND

This case arises from 19-year-old Howe's interactions with 13-year-old K.B., whom he met on Snapchat. The two exchanged messages and nude photos for a time and talked about K.B.'s troubled home life. One night, K.B. reported to Howe that both her dad and aunt had become angry and yelled at her. She told Howe, "'I'm done,'" and he said he would come get her. Howe then drove to K.B.'s home and parked around a little curve outside of her house.

In the early morning hours, after everyone else had fallen asleep, K.B. walked out of her home and got into Howe's waiting car. They drove from K.B.'s home in Syracuse to Howe's camper in Belleville. They made a few stops during the four-and-a-half-hour drive. Once at a rest stop, they slept and had sex twice. And another time they were stopped in Concordia for speeding. After arriving at Howe's camper, they went inside, slept for a little bit, and then had sex three or more times.

During this time, K.B.'s father contacted law enforcement to report that K.B. had run away. With the help of the FBI, officers tracked K.B.'s cell phone and found her at Howe's address. While K.B. and Howe did not open the door when law enforcement arrived, eventually Howe told K.B. to go out and talk to the police, and she complied. After confirming her identity, K.B. went with the officers to the police station.

The State charged Howe with four counts of rape. The parties originally entered into a plea agreement where Howe pled no contest to a single count of aggravated indecent solicitation of a child. After receiving the presentence investigation report, it was discovered that Howe would be classified as a persistent sex offender due to prior convictions and adjudications. Because that would have resulted in a much higher sentence than the parties expected, Howe was allowed to withdraw his plea. The parties

2

then negotiated another plea agreement that would have achieved the same prison sentence as in the previous plea, but Howe proceeded to trial instead.

A jury convicted Howe as charged. The district court imposed concurrent hard 25 sentences for each count of rape. Howe timely appealed.

REVIEW OF HOWE'S APPELLATE CHALLENGES

I. *Did the district court err in denying Howe's request for substitute counsel?*

Howe argues that the district court abused its discretion when it denied his motion for substitute counsel because he believed that his appointed counsel was not representing him to the best of her ability, in the manner that he wished, and that she had withheld evidence from him. The State argues that Howe did not demonstrate justifiable dissatisfaction because at the hearing on the motion for new counsel Howe did not show any evidence or belief that there was a conflict, disagreement, or breakdown in communication.

*Standard of review*

A district court's inquiry into whether the defendant showed justifiable dissatisfaction with appointed counsel is reviewed for abuse of discretion. *State v. Brown*, 300 Kan. 565, 575-76, 331 P.3d 797 (2014). A district court abuses its discretion if the decision was: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. 300 Kan. at 571.

The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

*The court did not err in denying Howe's request for substitute counsel.*

A district court has a duty to inquire into the protection of a defendant's Sixth Amendment right to counsel under the United States Constitution if it becomes aware of a possible conflict between an attorney and a defendant charged with a felony. *State v. Prado*, 299 Kan. 1251, 1257, 329 P.3d 473 (2014). The Kansas Supreme Court has also held that in order to trigger a district court's duty to inquire, a defendant typically must make "'an articulated statement of attorney dissatisfaction.'" *State v. Pfannenstiel*, 302 Kan. 747, 760, 357 P.3d 877 (2015) (quoting *Brown*, 300 Kan. at 575).

While a defendant has a constitutional right to counsel, they have no right to choose which attorney will be appointed to represent them. To warrant substitute counsel, a defendant must demonstrate "'justifiable dissatisfaction'" with appointed counsel. *State v. Breitenbach*, 313 Kan. 73, 90, 483 P.3d 448 (2021) (quoting *State v. Sappington*, 285 Kan. 158, 166, 169 P.3d 1096 [2007]). Justifiable dissatisfaction includes demonstrating a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between the defendant and counsel. A court is justified in refusing to appoint new counsel as long as there is a reasonable basis to believe the attorney-client relationship has not deteriorated so much that appointed counsel can no longer effectively aid in the presentation of a defense. *Breitenbach*, 313 Kan. at 90.

The first step in this analysis is to determine whether Howe made "'an articulated statement of attorney dissatisfaction'" to trigger an inquiry. *Pfannenstiel*, 302 Kan. at 760.

Here, Howe submitted a pro se motion stating he "feel[s] like Julie Effenbeck is not representing me to the Best of her abiltys [*sic*] and not how I want and is withholding evidence from me so I ask for a new Attorney." Though vague, the district court presumed that his complaints about his counsel's performance amounted to an articulated statement of attorney dissatisfaction triggering the district court's duty to inquire.

4

Step two is to determine whether the district court inquired about a potential breakdown in communication between Howe and his counsel, and if so, whether the inquiry was adequate to resolve the matter. In making an inquiry, the district court need not make "'a detailed examination of every nuance'" of a defendant's claim of dissatisfaction with counsel. *State v. Toothman*, 310 Kan. 542, 554, 448 P.3d 1039 (2019). Rather, a district court must only give the defendant "'the opportunity to explain'" the alleged conflict of interest with counsel. See *State v. Valdez*, 316 Kan. 1, 25, 512 P.3d 1125 (2022).

Here, the district court held a hearing solely on the motion for substitute counsel and allowed Howe to explain his complaints about his appointed counsel. Howe said, "I just have a feeling that someone else would do me better in the long run." When asked if he could no longer communicate with Effenbeck, he responded, "To a degree." But when the court asked if Howe and his attorney were arguing, for example, about "whether a motion should be filed or something like that," Howe said no. Rather, he said some of the things the attorney told him did not make sense. Before inquiring of Effenbeck, the district court confirmed with Howe that he had told the court everything that he wanted it to know.

The district court then inquired about Howe's complaints with Effenbeck. Effenbeck discussed the various efforts she had made in Howe's case including striking two advantageous plea deals and how she believed that she had turned over all evidence that she had to Howe. When asked again, Howe could not articulate any evidence he was missing. As to the communication aspect, Effenbeck maintained that there were no issues with Howe and she was prepared for his case, but that she had a busy schedule with multiple upcoming trials.

The district court found no evidence to demonstrate that the relationship between Howe and his appointed counsel had deteriorated so much that they could no longer communicate. The court clarified for Howe that it is the job of appointed counsel to apprise Howe of the potential risks and benefits for every decision made in the legal process, and though they may be a harsh reality it is not a reason to grant new counsel.

On appeal, Howe asserts the district court should have discerned problems had cropped up between Howe and his counsel because he asserts that Effenbeck "appeared frustrated that [he] would not plead guilty" when answering the court's questions. He relies on the following remarks to support this claim:

> "HONORABLE JUDGE KIM CUDNEY: . . . So, Ms. Effenbeck, can you tell me—or can you address any of his concerns?
>
> "MS. JULIE EFFENBECK: Yes, Your Honor. Um, as the Court's aware, this case is set for late November. I think it's set a couple days before Thanksgiving.
>
> "Um, and as the Court is aware, there was a plea entered. Um, because Special Rule 5, uh, kicked in. Then he was allowed to withdraw his plea.
>
> "Mr. Ferrell and I renegotiated. Um, actually the plea agreement now would be that he would enter some pleas to some level seven, um, counts.
>
> "Attempted sexual battery. Um, he turned that new plea down. Which essentially would've been exactly the same amount of time as the other one. Mr. Ferrell and I just had to find a creative way to get there with Rule 5.
>
> "Um, so then it was set for trial in November. He has—I don't—I guess I'd like to know what discovery he thinks he hasn't received.
>
> "Um, he's gotten everything. And that was sent up to him some time ago. Um, the prosecutor provided me with some new reports.
>
> "I got those, I believe in late July. And those were forwarded to the Defendant, um, with a letter indicating that now we have some new witnesses in the jail regarding some things that were said.
>
> "So he would've received those, um, I believe that would've been late July.
>
> "So he has gotten literally everything that I have. So I don't know what else he believes that I have.

"But he's been provided, um, yes. The reports went out to him on July 27th. So that was the recover—re—discovery came in on July 27th and went out to him.

"So—and that was regarding some new witnesses that he had been, um, talking to.

"So, that's what I've got, Your Honor. Um, I don't know, whatever the Court would choose to do."

This court does not view this exchange in the same way Howe does. Rather than a frustrated discussion about plea agreements, counsel appears to simply have recounted the steps she took in Howe's best interest and clarified that she believed all discovery had properly been turned over to Howe.

Howe also misreads Effenbeck's response to the allegations of breakdown in communication as Effenbeck "tellingly" avoiding answering the court's question. He relies on the following exchange between the court, Effenbeck, and Howe to support this point:

"HONORABLE JUDGE KIM CUDNEY: Ms. Effenbeck, do you feel that communication has broken down with Mr. Howe?

"MS. JULIE EFFENBECK: Your Honor, um, in this particular case it's not set until, like I said, the end of November.

"Um, I have got several jury trials between now and then. And unfortunately because of the way things are, a lot of them have just been back-to-back-to-back.

"Um, I had a rape trial last week in Hays, um, that wound up settling out, um, during the trial.

"Um, I've got another [aggravated] Indecent liberty case coming up here shortly. Um, and this case too, as [County Attorney Justin] Ferrell knows, I mean there's just not—I mean there's going to be certain witnesses, um, law enforcement.

"It's not going to be a very difficult case. Um, there's not going to be a lot of witnesses—you know what I mean? There's not—you know there's not a situation where we're dealing with any complicated legal issues or anything like that.

"It's pretty straightforward, Your Honor.

"HONORABLE JUDGE KIM CUDNEY: And Mr. Howe, do you have any final comments you want the Court to consider?

"MR. MATTHEW HOWE: No, Your Honor."

While Effenbeck admittedly did not directly answer the court's question, this isolated exchange does not demonstrate that Effenbeck believed communication between her and Howe had broken down. Instead, it appears that Effenbeck is discussing why communication might occur less frequently—due to her trial commitments, not any problems in the attorney-client relationship. And when the court gave Howe an opportunity to respond, he added no further information, nor did he appear to believe Effenbeck's comments had proven his point.

In his appellate brief, Howe then references an instance from an earlier pretrial motion hearing in which he believes Effenbeck "chastised" him, claiming this exchange "corroborates the breakdown of [their] relationship":

"MR. JUSTIN FERRELL: And I can look into that. I had not got a response back. I know he was charged with that. I do not have information as to whether he was convicted or it was dismissed.

"Uh, I went through—

"MS. JULIE EFFENBECK: Sometimes in the—

"MR. MATTHEW HOWE: I was never convicted.

"MS. JULIE EFFENBECK: —um, he, what—Mr. Howe—

"MR. MATTHEW HOWE: I don't know—

"MS. JULIE EFFENBECK: —Mr. Howe, just stop."

Based on the context of the statement it appears that Effenbeck was simply instructing Howe to stop interrupting the prosecutor and Effenbeck's attempts to answer questions the court had posed. We fail to see how this exchange—which occurred almost one year before the hearing on Howe's motion for new counsel—has any relevance to the court's decision on Howe's motion.

Howe next asserts that it was inappropriate for Effenbeck to have him acknowledge the waiver of his plea deal on the record before trial, noting that plea negotiations are confidential. He says this shows both a conflict of interest and a breakdown in attorney-client communication. Yet the information revealed on the record was not a plea negotiation, but a summary of the plea offers which Howe acknowledged he rejected. Nor did Effenbeck disclose anything confidential.

Because Howe accepted the first plea deal, which was withdrawn due to unforeseen circumstances but rejected the second plea deal that had a functionally identical result, reading the full acknowledgment of the waiver preserved a thorough record for appeal. Effenbeck also confirmed with Howe that he realized he was facing four life sentences if convicted of the four charges, making a record of the risk he was taking by rejecting the plea deal. Rather than demonstrating inadequate representation, this exchange creates a record that Effenbeck had communicated to Howe all the details of the plea offers and his potential consequences in rejecting the deal. And it gave him an opportunity to object to her representation at this time, which he failed to do. Instead, he confirmed he understood the circumstances and had no questions.

Lastly, Howe asserts that Effenbeck's performance at trial was inadequate because she did not call any witnesses, did not give an opening argument, did not request specific jury instructions and did not file any posttrial motions seeking a departure sentence. Yet, as the State points out, the record does not show Howe objected to any of these strategic decisions or that Effenbeck had failed to communicate with him about any of them. Howe does not claim he raised any concerns about his attorney's representation at trial, nor did he raise any concerns about differences of opinion on trial strategy in his motion. And he fails to cite any legal authority to justify this revisionist approach to the district court's decision.

The district court inquired into Howe's objections and reasonably determined he had not shown good cause for the appointment of new counsel. Howe has failed to persuade us that no reasonable person would have agreed with the district court's decision to deny his motion.

II. *Did the district court err by admitting charging documents as evidence of prior criminal acts?*

Howe next argues that the district court erred in admitting charging documents from two pending Hamilton County cases in which he had not been convicted. He asserts that charging documents are without evidentiary value because they have not been proven. The State contends that under K.S.A. 2024 Supp. 60-455, evidence need only be material and probative to be admissible. As a result, the State argues the evidence was properly admitted because the two additional charges pertained to Howe's continuing conduct with the same victim demonstrating intent, opportunity, motive, identity, absence of mistake or accident, and preparation.

*Standard of review*

"[E]vidence that a person committed a crime or civil wrong on a specified occasion . . . is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference" the defendant committed another crime. K.S.A. 2024 Supp. 60-455(a). But evidence that a defendant committed other crimes or civil wrongs may be admissible "when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2024 Supp. 60-455(b).

In reviewing the admission of prior crimes evidence under K.S.A. 60-455, an appellate court uses a three-step test. First, the court considers whether the evidence is relevant to establish a material fact at issue. The determination of whether the prior

crimes evidence is material is subject to de novo review. Second, the reviewing court must determine whether the material fact is disputed and whether the material fact is relevant to prove the disputed fact. This determination by the district court is reviewed for an abuse of judicial discretion. Third, the court must consider whether the probative value of the evidence outweighs the prejudicial effect. This step is also analyzed under an abuse of discretion standard of review. *State v. Claerhout*, 310 Kan. 924, 927-28, 453 P.3d 855 (2019). If prior crimes evidence is admitted under K.S.A. 60-455 in a jury trial, a limiting instruction must be provided to inform the jury of the specific purpose for which the evidence was admitted. *State v. Evans*, 313 Kan. 972, 987, 492 P.3d 418 (2021).

*Howe's continued contact with the victim was material and probative.*

The information in the charging documents was material to the current case as it relates to the same victim, and according to the district court, demonstrated motive, opportunity, intent, preparation, or plan. The first charging document related to the violation of Howe's conditions of release following his arrest for his crimes against K.B. This violation demonstrated continuing contact with the victim. And the second charging document related to the interference with parental custody and contributing to a child's misconduct, both of which occurred concurrently with, if not before, the rape charges.

Howe first asserts that because statutory rape does not contain a culpable mental state requirement, evidence cannot come in under the intent or knowledge exceptions. This is a conflation of the evidentiary exception and the elements of the crime. Materiality means the fact tends to have bearing on the decision in a case, but it is not necessary that it is a material element of the charge. The State was not using this evidence to show that Howe intentionally and knowingly raped K.B., but that Howe intentionally and knowingly procured a 13-year-old, against the wishes of her parents, and transported her to his home; which can then segue into the other exceptions of

11

opportunity (a 13-year-old being in his home) or absence of mistake (he drove four-and-a-half hours to get her). Evidence is often presented in pieces, that when placed together, paint the full picture. To require each piece of evidence to constitute the full picture of a material element is an unrealistic standard.

Howe then argues that the charging documents cannot be used to establish preparation or opportunity because the charges occurred after the fact. This argument misrepresents the evidence because the State confirmed only one of the charges occurred after the fact, not both. Although the district court conveyed its reasoning on both in one statement, this does not mean every exception applies to both charging documents. Rather, the opportunity and preparation exception pertain to the interference with parental custody and contributing to a child's misconduct.

Finally, Howe argues that the district court erred in using the absence of mistake or accident exception because he does not argue innocence. The court took up the discussion of these issues on the morning of trial and did expand the explanation for its decision by listing more exceptions than necessary to ensure that it explained its decision for appeal. Yet in its earlier journal entry on the matter, the court's listing was more circumspect, noting only that the evidence was relevant to prove motive, opportunity, intent, preparation, or plan. That the court added other alternative exceptions when explaining its decision later is not reversible error, especially when there were several alternative grounds which justify admission of the evidence.

> *The admission of the charging documents would be a harmless error due to the uncontested admission of two prior child sex crime convictions.*

Even if the district court had erred in admitting this evidence, any possible error was harmless. The erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 2024 Supp. 60-261. *State v. Shields*, 315 Kan. 814, 832, 511

P.3d 931 (2022). Under that standard, the party benefitting from the error must persuade us that no reasonable probability exists that the error affected the trial's outcome given the entire record. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

The charging documents that Howe challenges were not of such a prejudicial nature that they would impact the jury's decision-making process. In fact, Howe does not challenge the significantly more prejudicial admission of two prior sex crime convictions against minors from Nebraska. Thus, even if the charging documents were admitted in error, the convictions for sex crimes against children in Nebraska would have had the same, if not greater, impact on the jury.

The State highlights that as the party that benefits from the potential error, it must show that no reasonable probability exists that the error affected the outcome. To do so, the State also points to the direct testimony from the victim, the testimony from the officers who responded to the crime, and a cellmate who had a conversation with Howe about Howe's crimes and corroborated the details provided by the victim. Taken together, there is no reasonable probability that the charging documents would be the main consideration for the jury or would have impacted the outcome of the case.

III. *Did the district court err by allowing testimony that was prejudicial in nature?*

Howe last argues that the district court erred in allowing certain aspects of two witnesses' testimony. First, he challenges the admission of K.B.'s testimony about how Howe's actions have impacted her life. Next, Howe argues that the district court erred in allowing his former cellmate Tyler Sumpter to testify about whether he thought Howe showed remorse when they discussed his crimes in their cell. The State asserts that neither topic was improper because they both went to the emotions and observations of the witnesses' firsthand experience, and the testimony was not prejudicial.

13

*Standard of review*

"The admission of evidence involves several legal considerations: determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value." *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Appellate courts apply different standards of review depending on the consideration at issue.

Relevant evidence is defined in K.S.A. 60-401(b) as "'evidence having any tendency in reason to prove any material fact.'" 313 Kan. at 237. Even if the evidence is relevant, a district court has discretion to exclude it where the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 2024 Supp. 60-445.

When an appellant questions the district court's weighing of probative value and prejudice, an appellate court reviews the ruling for an abuse of discretion. *State v. Alfaro-Valleda*, 314 Kan. 526, 535, 502 P.3d 66 (2022).

The erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 2024 Supp. 60-261. *Shields*, 315 Kan. at 832.

> *K.B.'s testimony regarding the effect of the rape is relevant because it helped the jury analyze consistency and credibility of a witness.*

K.S.A. 2024 Supp. 60-456(a) provides that lay witnesses can testify to their opinions or make inferences that "(1) [a]re rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge."

14

Evidence about impact on a victim has the tendency to prove or disprove material facts through its bearing on credibility. K.S.A. 60-420 states that for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence of any conduct by him or her and any other matter relevant to the issues of credibility. This is often consequential in resolving factual disputes. Still, evidence of specific instances of a witness' "conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible." K.S.A. 60-422(d).

Here, K.B.'s testimony about the impacts of Howe's actions helped demonstrate the reliability of her testimony:

> "Q.  —the situation you've had to go through, how has that—how are you today? How has that affected your life?
> "A.  I mean, it's made me—my mom and I both had to rearrange everything today for us to be here. Like—
> "Q.  Mm-hmm.
> "A.  —I thought it was, like—not trying to be rude or whatever, or seem blunt—but, this was done, like, a year ago—
> "Q.  Sure.
> "A.  —and so, like, we have things to do also, and I have school. We have things to do."

K.B.'s explanation is relevant as it relates to her effort to see her claims through and demonstrate to the jury her continuing credibility through her presence at trial to support the claims, despite busy schedules.

*Howe's former cellmate Sumpter's testimony regarding Howe's behavior when they discussed his crimes was relevant because it was rationally based on Sumpter's perception of Howe.*

As noted above, K.S.A. 2024 Supp. 60-456(a) provides that lay witnesses can testify to their opinions or make inferences that "[a]re rationally based on the perception of the witness." "'[C]ourts have been very liberal in admitting witnesses' testimony as to another's state of mind if the witness[es] ha[ve] had sufficient opportunity to observe the accused so as to draw a rational conclusion.'" *State v. Lowrance*, 298 Kan. 274, 294, 312 P.3d 328 (2013) (quoting *United States v. Hoffner*, 777 F.2d 1423, 1425 [10th Cir. 1985]).

Here, Sumpter had direct communication with Howe, and observed Howe's demeanor as they spoke about his crimes. Based on his demeanor and flippant comments regarding K.B.'s age, Sumpter believed that Howe did not show remorse for the crimes that he had committed. When asked about his observations, Sumpter testified in the following manner:

"Q. Okay. Did he show any remorse for the allegations made against him?
"A. Repeat that, please?
"Q. Did he show any remorse regarding the allegations against him?
"A. To me—
    "MS. EFFENBECK: Your Honor, I'm gonna object to that being relevant. Whether or not a person shows remorse.
    "MR. FERRELL: They're—we're testifying to the conversation they had in regard to the situation at hand, there, in the jail cell, Your Honor.
    "THE COURT: I'll allow it.
"A. No, he did not.
"Q. (BY MR. FERRELL) Okay. Make any comments to you about any of that?
"A. He—he didn't feel sorry, if that's what you're asking."

While Howe argues that his mental state is irrelevant because it is not an element of the crime, this again misconstrues the requirements for evidence. The State does not have to remove all evidence that contains any kind of emotion or thought simply because it is not an element of the crime; rather this evidence can clarify the context in which the crime occurred and help the jury decide whether the State has carried its burden to show that the rape did occur.

*The testimony by K.B. and Sumpter was not unduly prejudicial, or, even if it was, it would constitute harmless error.*

While the testimony from K.B. and Sumpter at issue was relevant, the district court then must weigh whether the probative value outweighs the prejudicial value. Here, the district court allowed the testimony, and we review that decision for an abuse of discretion. See *Alfaro-Valleda*, 314 Kan. at 535.

Permitting the testimony of K.B. and Sumpter was not an abuse of discretion. "All evidence that is derogatory to the defendant is by its nature prejudicial to the defendant's claim of not guilty. Evidence that actually or probably brings about a wrong result under the circumstances of the case is 'unduly prejudicial.'" *State v. Clark*, 261 Kan. 460, 477, 931 P.2d 664 (1997).

Howe makes no argument that the testimony at issue was prejudicial. Instead, he solely focuses on its relevance. And we fail to see how the testimony was unduly prejudicial. Even if the admission of these types of testimony—impact on a victim or inference as to the defendant's state of mind—were in error, the answers by K.B. and Sumpter were both benign and unlikely to elicit any emotion. Thus, the error, if any, would be harmless. We therefore affirm the district court's decision to admit the testimony at issue from K.B. and Sumpter.

IV. *Did cumulative error deny Howe the right to a fair trial?*

Howe argues the cumulative effect of the errors he claims deprived him of a fair trial. Yet he offers no explanation for why he believes the alleged errors relate to each other or combine to achieve a level of prejudice that jeopardized his right to a fair trial.

*Standard of review*

Cumulative trial errors, when considered together, may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in context and consider how the trial judge dealt with the errors as they arose; the nature and number of errors and whether they are interrelated; and the overall strength of the evidence. If any of the errors being aggregated are constitutional in nature, the cumulative effect must be harmless beyond a reasonable doubt. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024).

> *Howe's claims of error, even if taken as true, are insufficient to support a cumulative error argument.*

Howe's first issue concerns a violation of the right to counsel, which if established would be structural error. *State v. Johnson*, 310 Kan. 909, 913-14, 453 P.3d 281 (2019). But since a defendant has no right to choose their counsel, and Howe did not demonstrate a justifiable dissatisfaction with his appointed counsel, this claim does not contribute to a cumulative error analysis.

The next three claims Howe presents relate to the admission of evidence of prior bad acts and testimony Howe asserts was irrelevant. Despite Howe's repeated assertion that no evidence pertaining to mental state should be admitted, the charging documents

18

and impact testimony were relevant, probative, and material to the case. And even if the documents and testimony were in error, it was harmless error, and Howe does not demonstrate how their exclusion would have changed the verdict.

Howe fails to explain how the alleged errors, if combined, would deprive him of a fair trial. Given the strength of the evidence and the harmless nature of the evidence being contested, the outcome would have been the same even if the admission of the evidence were in error. Thus, no cumulative error required reversal of Howe's convictions.

Affirmed.